JAMES TOLBERT v. WILLIAM BURKE.

*Evidence—Declarations—Res gestæ—Witnesses—Impeachment.*

1. A declaration of a party in his own interest, and not in the presence of the other party, is inadmissible under any rule of evidence.

2. In a civil case it does not necessarily follow that the admission of incompetent evidence cannot be cured by the instructions of the court.

3. Where a witness denies making a statement which, if made, tends to show his interest or bias, the party making the inquiry may show that the statement was made; citing *Crippen v. People,* 8 Mich. 117; *Beaubien v. Cicotte,* 12 Id. 459;

*Patten v. People,* 18 Id. 314; *Geary v. People,* 22 Id. 220; *Hamilton v. People,* 29 Id. 182.

4. This case involves the question whether the defendant, for whom a house was being erected, agreed to become personally liable for lumber furnished by the plaintiff to the contractor, who was to furnish all the materials, including lumber, for a given price; and an examination of the opinion is essential to the proper application of the points stated in the head-notes.

Error to Washtenaw. (Kinne, J.) Argued November 13, 1891. Decided December 21, 1891.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*B. M. Thompson* (*E. B. Norris,* of counsel), for appellant, contended:

1. The rule in regard to this class of testimony—oral declarations which are explanatory of some fact—is as follows:

   *a*—The fact itself must be relevant and material, independently of what was said.

   *b*—The declarations must relate to the fact, and be explanatory of it.

   *c*—The declarations must have been made at such a time that they can be regarded as explanatory of a condition then existing, or an event then occurring, and not a narrative of a past condition, or an event already past and fully terminated. —Citing *Morrill v. Foster,* 32 N. H. 358, 360; *Cleveland v. Newsom,* 45 Mich. 62; *Jones v. Railway Co.,* 49 Id. 573, 576; *Joslin v. Ice & Coal Co.,* 53 Id. 322, 326; *Stevens v. Castel,* 63 Id. 111; *Wright v. Boston,* 126 Mass. 161, 164; *Stevens v. Miles,* 142 Id. 571, 572.

2. The evidence offered comes within the rule. These book entries were competent to show, in connection with the other evidence, the quantity, kind, and quality of lumber delivered. They did not constitute a contract, but under the rules became evidence when supplemented by other proofs; citing *Montague v. Dongan,* 68 Mich. 98, 101; *James v. Spaulding,* 4 Gray, 451, 452; *Com. v. Jeffries,* 7 Allen, 548, 564.

3. These entries being mere *memoranda,* not a contract, therefore what was thought or said by the person making the *memoranda* is explanatory of them, and admissible. Such person may testify not only to what his secret and undisclosed purpose was, but he may show what he openly declared and

announced that purpose to be. And what he said is far more satisfactory evidence than his testimony as to what he thought, for obvious reasons; citing *Walker v. Richards*, 41 N. H. 388, 391.

4. While the declarations in this case—the directions given by Keech to the foreman—were made after the Scott order was copied into the order-book, they were made before this sale and delivery of lumber was completed. They were a part of that transaction. They referred to and were explanatory of a then existing condition of affairs. The foreman's attention was called to this order, and he was directed not to deliver the lumber to Scott, and such directions were given before a foot of lumber had been delivered. The Court will bear in mind that the question presented was, to whom was this lumber sold, to whom was credit given? And these declarations, ruled out by the trial court, were made after the Scott order was received, but before any sale or delivery was made or credit given. They were clearly a part of the *res gestæ;* citing *Davis v. Zimmerman*, 40 Mich. 24; *Pinney v. Cahill*, 48 Id. 584; *Larson v. Jensen*, 53 Id. 427; *Stevens v. Castel*, 63 Id. 111; *Dunbar v. McGill*, 69 Id. 297; *Ribble v. Starrat*, 79 Id. 204; *Hagadorn v. Lumber Co.*, 81 Id. 56; *Railway Co. v. Leverett*, 48 Ark. 333.

*D. Cramer (Cramer & Cramer,* of counsel), for defendant, contended for the doctrine of the opinion.

MORSE, J. This is a suit brought by the plaintiff to recover the value of a bill of lumber alleged by him to have been sold and delivered to the defendant.

The plaintiff's theory was that in the fall of 1889 Mr. Scott, a builder, entered into a contract with the defendant, William Burke, to repair or rebuild a house for him in the city of Ann Arbor. Mr. Scott was to furnish all the materials, including lumber, for $1,350. Mr. Scott took his bill for lumber, and gave it to Mr. Keech, manager of the plaintiff, Mr. Tolbert, who entered it upon his order-book. So far there does not appear to be any dispute between the parties. It is claimed by Mr. Keech that Mr. Scott at the time was considerably in debt to the plaintiff, and that he (Mr. Keech) was not

disposed to enlarge the indebtedness, and that he did not intend to have his lumber delivered until he could make some arrangement with Mr. Burke. He (Mr. Keech) further claims that under these circumstances he saw Mr. Burke, and that he asked Mr. Burke if he would pay for this lumber; that Mr. Burke said that he would; that Mr. Keech asked him to see Mr. Scott, and have it so understood; that shortly after Mr. Burke saw Mr. Keech again, and told Mr. Keech that the arrangement had been made with Mr. Scott that Mr. Burke should pay for the lumber. He (Mr. Keech) further claims that thereupon, relying solely upon the credit of Mr. Burke, and depending solely upon his promise to pay this debt, he delivered this bill of lumber to Scott. The court charged the jury that, if they found this theory to be correct, the plaintiff was entitled to recover.

The defendant denied that he ever agreed with Mr. Keech to pay for this lumber, or that in any manner or form he ever promised to pay this debt, or to become responsible therefor. Mr. Burke's position in the matter is substantially as follows: That there was a deal with Mr. Keech; that they were good friends; that he had given Mr. Keech favors, and was willing and glad to do it again; that Mr. Keech asked him to keep back from Mr. Scott a sufficient sum of money to pay for this lumber; that Mr. Burke said he would be glad to do so, if he could; that Mr. Scott consented to do it, and that this first occurred when all, or nearly all, the lumber had been actually delivered; that all that Mr. Burke did, or ever thought of doing, was simply to endeavor to hold back a certain sum of money for the benefit of plaintiff; that he (Scott) failed to complete the job; that Mr. Burke has paid some $700 in all to Mr. Scott. The court instructed the jury that, if they found Mr. Burke's

version to be the true one, their verdict must be in his favor.

The jury found for the defendant.

Plaintiff brings error.

The testimony of Keech shows that when Scott presented him with a bill of lumber for this job he took it, and entered it upon his order-book on or about November 1, 1889. It was headed, "George Scott. Burke job." The entry of this order was dated November 5, and under it were found on the trial entries of the dates November 23, December 3, and December 9. He had no other book upon which the account was kept. He testified that soon after said order was so entered he saw defendant, and asked him if he would pay plaintiff for the lumber to be furnished for the repair of his said house if Scott was willing to make that arrangement, and that defendant then and there promised and agreed to pay for such lumber if Scott would consent thereto; and thereupon Keech telephoned to the foreman of plaintiff's yard to deliver the lumber entered upon the order-book as aforesaid. It also appears from the testimony that he did not see Burke until about the 6th of November, and there had been before that time one load of lumber drawn up to Burke's house and delivered on this order of November 5. The following question was then asked the witness, and the following proceedings were had in reference thereto:

"*Q.* What orders had you given at your yard about delivering any lumber on the Burke job before you had this conversation with Mr. Burke?

"*Mr. Cramer:* We object to that.

"*The Court:* I think there is some doubt about that.

"*Mr. Thompson:* I admit this cannot bind Mr. Burke, but we have the right to show, so far as this witness is concerned, what he had in his mind, and what course he

had taken. Mr. Burke may say he did not understand this conversation with Mr. Keech in this way, and the jury may find he did not, but we want to show that he gave orders to his foreman that the lumber should not be delivered until an arrangement had been made with Mr. Burke to place beyond any question where the credit was made, so far as plaintiff is concerned. We will admit that it does not bind Mr. Burke, unless he was made a party to it. This is a part of the transaction just as much as this book is.

"*The Court:* Do you propose to show what Keech said to his foreman?

"*Mr. Thompson:* Before he saw Burke?

"*The Court:* Before the bill of lumber had been left there?

"*Mr. Thompson:* Yes, sir; we propose to show that he said to his foreman, 'You need not deliver any more lumber until I have seen Mr. Burke, and made an arrangement;' and then, after he sees Mr. Burke, he testifies that he telephoned down that they could go ahead and deliver the lumber.

"*The Court:* I am inclined to think it is not competent. (To which ruling of the court the plaintiff duly excepted.)"

He also testified that no change was ever made upon this book, and there is no charge upon any other book.

The plaintiff also introduced as a witness his foreman under Keech, and attempted to prove by him what directions Keech gave him in regard to filling this order. It was objected to. The following colloquy then took place:

"*Mr. Thompson:* I offer to show by this witness that prior to November 5, or upon that day, he had received instructions from Mr. Keech not to deliver any of the lumber appearing upon Mr. Scott's account on page 17 of the order-book until he had received further instructions from Mr. Keech, who told him that he should not deliver the lumber until he had made an arrangement with Mr. Burke.

"*Mr. Cramer:* I object to that.

"*The Court:* I think I shall have to sustain the objection."

The plaintiff excepted. The foreman further testified that he sent this one load of lumber on his own responsibility. The record then reads as follows:

"*Q.* Do you mean by that that you delivered it in violation of orders that you had received?

"*Mr. Cramer:* We object to the whole of that.

"*The Court:* Let us hear the question and objection.

"*A.* Yes, sir.

"*Mr. Thompson:* I desire simply to prove that Mr. Keech did not at this time charge any lumber up to Scott; that he not only did not charge the lumber to Scott, but his book-keeper and his men had received positive orders not to deliver any to Scott.

"*Mr. Cramer:* We object to this statement before the jury.

"*The Court:* We will hear what Mr. Thompson has to say.

"*Mr. Thompson:* Mr. Scott did not make this entry upon this book. He was not present when it was done. All he did was to hand in the bill of the lumber he wanted. We want to explain when this was put on, and what that means.

"*Q.* This book is in your charge, isn't it?

"*A.* Most of the time.

"*Mr. Thompson:* We want to show that he had positive instructions not to deliver any of that lumber on Mr. Scott's account, and that he delivered those instructions before a board had been delivered on the work. He has already testified that he delivered the first load on his own responsibility. Now, we take the next step, and state that afterwards he received from Mr. Keech orders to deliver the rest of it, because an arrangement had been made with Mr. Burke. Mr. Burke is not bound by what the foreman said, and we offer this only to explain the entries, and to show that they are not entries charged to Scott. We can go behind the book and show the real intent of the parties.

"*The Court:* There is no evidence that it was charged to Scott. I am inclined to think that I ought not to admit that evidence at present. Later in the case something may develop that will entitle you to offer that proof, but at the present I think that it is hearsay, and incompetent for the purpose for which you offer it.

"*Mr. Thompson:* Do I understand from your honor's

position that there is nothing in that account to show that it was charged to Mr. Scott?

"*The Court:* I cannot say that. I only say that the testimony of Mr. Keech and his book-keeper is that this is simply an order-book, upon which they took an order from Mr. Scott.

"*Mr. Thompson:* And you will instruct the jury that from that they cannot infer that any portion of that account was charged to Mr. Scott?

"*The Court:* I don't know as to that. I think Mr. Keech and his book-keeper may explain all they wish about the entry. (To which ruling the plaintiff duly excepted.)"

He further testified that Scott asked him to deliver more lumber, and he did not do so, because he had instructions from Mr. Keech not to deliver any more until he had seen Burke, and made arrangements that Burke should be security for the lumber. This was stricken out, and plaintiff excepted.

Keech was recalled, and testified that he made the first entry on the book when Scott was present, and at the time Scott gave him the order; that he did not know whether or not Scott remained until the whole of the order was entered. He was then asked:

"*Q.* How soon after that did you see your foreman to give any direction with reference to this, without stating what the directions were?

"*Mr. Cramer:* We object. It is entirely immaterial. (Objection overruled.)

"*A.* I told the foreman—

"*Q.* Wait. How soon after?

"*A.* I told him right away after the order was put on the book.

"*Q.* Do you mean by that within a minute?

"*A.* I cannot say within a minute, but within just a short time after I got the order. I told him not to fill the order, to wait on it.

"*The Court:* I think you may show the significance of such an order as that.

"*Mr. Thompson:* He has testified that he told his

foreman, as soon as the order was received, not to deliver that.

"*Mr. Cramer:* We ask to have that stricken out.

"*The Court:* Strike it out for the time being. (To which ruling of the court the plaintiff then and there duly excepted.)

"*Mr. Thompson:* The question is whether what was said by Mr. Keech to his foreman, whose business it was to fill this order, made at the identical time it was entered, is a part of the *res. gestæ.*

"*The Court:* I think you may show that, at the time he took this order from Mr. Scott, Keech turned to Mr. Scott and said to him one thing or another,—'I will fill this bill,' or 'I will not.' If he can, he may show he said, 'I will look this matter over, and see whether I can.'

"*Q.* Did Mr. Scott know that you entered this bill on the book?

"*A.* I cannot say as to that.

"*The Court:* I will permit you to show that the understanding between Mr. Keech and Mr. Scott was that there was no contract entered into by which Mr. Tolbert was compelled to deliver that lumber,—I will allow you to show what arrangement was made between the parties; but, if that contract was already entered into between him and Mr. Scott, it does not seem to me it is competent to show that perhaps afterwards he changed his opinion about giving Mr. Scott credit, and told the foreman not to deliver the lumber.

"*Mr. Thompson:* I insist the order was given to the foreman at the time it was entered.

"*The Court:* It seems to me all the *res gestæ* would occur between Keech and Scott. (To which ruling of the court the plaintiff then and there duly excepted.)"

The record further shows the following question, and what took place thereafter:

"*Q.* What was the understanding between you and Mr. Scott with reference to this bill of lumber at the time that Mr. Scott handed it to you?

"*Mr. Cramer:* We object to that. We want to know what was said between them.

"*The Court:* Very well; what was said, I think that is correct.

"*Q.* What was said at that time?

"*A.* He brought in the bill for this job, and said it was for repairing Mr. Burke's house. I took the bill down as I take every bill down.

"*The Court:* The question is whether or not you agreed to deliver that lumber to him.

"*A.* No, sir; I did not agree to deliver that lumber to him by taking that on the order-book. I had no need to have delivered one load of it, and I should not have delivered the lumber unless I had had the conversation with Mr. Burke, or I had had an understanding with him.

"*Mr. Thompson:* My impression is that his testifying as to his inward impression is not as competent as to show what his directions were to other men under his control with reference to it, because at the very moment he puts this upon his books he speaks to his foreman with reference to it as a part of the *res gestæ*.

"*The Court:* I think I have allowed you to do all you ought when I allowed Mr. Keech to state that when he entered that order he was not bound to deliver that lumber. I think you ought not to be allowed to show what he said to the foreman. (To which ruling of the court the plaintiff duly excepted.)"

Upon this showing in the record the plaintiff's counsel insist that they had a right to prove what instructions Keech gave to the foreman about delivering this lumber, to explain the entry made, and to show that its *prima facie* meaning was not its real meaning. It is claimed that these directions to the foreman were made in explanation of the fact being inquired into, to wit, to whom was the credit for this lumber given, and was a part of the *res gestæ* of the transaction.

We have set out all the offers made in respect to this direction, and all the material testimony relating to it. It clearly appears that the directions given to the foreman were not given in connection with the receiving of the bill of lumber from Scott, or its entry upon the order-book of plaintiff, but some time afterwards. The fact that Keech saw the foreman after the entry was made, after Scott had gone away, and told him not to

fill the order, was not a part of the transaction of making this entry. If it tended to show anything, it was that, after making the entry in the presence of Scott, and leading Scott to infer from the entry and all the circumstances connected with it while Scott was there that the lumber would be furnished on Scott's order and credit, he changed his mind, and told his foreman not to deliver any lumber, or "*any more* lumber," on the order until Keech saw Mr. Burke, and made arrangements with him. This would be hearsay, and not admissible as against Burke. The only ground upon which it could be admitted was that it was a part of the *res gestæ* of making the entry, and said at the time in explanation of it, to rebut the presumptions of the entry itself. This is what plaintiff's counsel at first claimed for it. As testimony to show that the credit for the lumber delivered was given to Burke and not to Scott, it was a declaration of a party in his own interest, and not in the presence of the other party. It could not be so used under any rule of evidence.

It is also assigned as error that the court permitted the defendant to show that it cost more to complete his house than the contract price, and that he paid money enough to Scott to more than satisfy the lumber bill of plaintiff. Scott was sworn as a witness for plaintiff. He testified that after he presented the bill for lumber to Keech he had a conversation with Burke in regard to who should pay for the lumber. Burke said to him: "Keech and I have a dicker, and, if there is no objection, I will pay for the lumber." Scott said, "All right." Scott testified that up to November 23 the understanding was, between himself and Burke, that the lumber should be charged to Scott. The bill up to November 23 amounted to $338. The whole bill sued upon was $364.09. He further testified on cross-examination that

he supposed he was to pay for the lumber, until Burke agreed otherwise; that he did not finish the job, because Burke ordered him away from it; that he made an assignment before he was ordered away; that afterwards he made a new arrangement, giving the details of such new arrangement. The testimony of the new agreement was given against the objection of the plaintiff. On redirect the plaintiff's counsel interrogated Scott, who testified that he told Burke he could finish the building for the original contract price, and agreed to finish it for such sum.

When the defense had the case, the counsel for the defendant said:

"*Mr. Cramer:* Mr. Scott having testified about completing the house for the contract price, I wish to put in evidence the testimony of certain witnesses to show that that building, according to the contract plan of Mr. Scott, could not have been finished for less than $835 after the $700 was paid; making $1,535. We offer this to rebut the impression that the Scott testimony makes, —that the building could be finished for the contract price; and that is the reason we wanted to show why Burke stopped Scott,—that it was because, instead of finishing the building, he was only getting pay for his own work and his own carpenters, and leaving all the bills unpaid, and he told him he would not have that.

"*The Court:* I don't think that is material to this issue at all. The only question is whether or not the testimony which Mr. Thompson offered last night as to Mr. Scott's offer would necessitate it; otherwise I shall have to instruct the jury this is not in this case.

"*Mr. Thompson:* So far as that testimony that I offered from Mr. Scott is concerned, I will consent that it may be stricken out. I said at that time I did not consider it had anything to do with th's matter. I will consent that all the testimony given by Scott upon that point be stricken out, and not considered by the jury at all.

"*Mr. Cramer:* If he means all the testimony given by Scott in regard to finishing the building for the contract

price after the assignment, all that about making the second bargain, etc.—   ·

"*Mr. Thompson:* A great deal of that was on cross-examination, before I said anything to him. Will your honor strike out everything in this case with reference to the cost of completing this building?

"*The Court:* I think it ought to be, on both sides. I will consent to that. That really has nothing to do with this issue.

" *Mr. Cramer:* We would be very sorry to have that stricken out. We want to have the jury understand just what it did cost to complete this building. No doubt they would like to have it stricken out.

"*The Court:* It does not affect this matter one way or the other; but, on account of the testimony introduced last night, I think I will allow you to show what it would cost to complete the contract."

Thereupon a witness was interrogated in relation to this subject, and plaintiff's counsel objected. The court said:

"I can only admit it to meet testimony of the plaintiff, which was introduced by Mr. Scott, that he could and would finish it for the original contract price. While I do not think it is very material, I think I ought to allow it, and will do so. When I come to instruct the jury, I shall have to instruct them that all this has nothing to do with this issue."

The witness then stated what it would cost to complete the building, under objection and exception of plaintiff. When the court came to instruct the jury he said:

"Something has been said and some testimony introduced tending to prove what it cost, or would cost, to complete this contract after Scott abandoned it. Now, gentlemen, as I have before said to you,—I now repeat it,—you ought totally and wholly to disregard that matter in this case; it is not relevant to the issue; and you should disabuse your minds of it entirely. The only issue for you to decide, and which you are called upon to determine, is the one I have already presented to you."

Under the circumstances, we think the error committed

in receiving the testimony was cured.   The court expressly
stated that he should admit it to meet the evidence of
Scott that he could finish the building for the original
contract price, but that, when he came to instruct the
jury, he should charge them that it had nothing to do
with the issue; and followed this up by instructing them
to that effect.   In a civil case it does not necessarily
follow that the admission of incompetent evidence can-
not be cured by the instructions of the court.   We are
satisfied from the record in this case that no prejudice
resulted to the plaintiff by the reception of this testimony.

It was competent to show by Scott on his cross-
examination that he had received money enough from
Burke to pay for this lumber and the work he had done
on the building when he quit the job, or what he
had been paid, and the amount of work he had done, to
rebut his evidence that Burke had agreed with him to
pay for the lumber.   If it was a fact that Burke had
paid him money enough to meet this lumber bill, over
and above what his work amounted to under the con-
tract, after the date of the alleged agreement of Burke
with Scott that Burke should pay for the lumber, it
would be a circumstance tending to discredit Scott's
testimony that Burke agreed with him to pay for this
lumber.

Upon cross-examination Scott was asked if he had not
said to one Schumaker that he would make the building
" a dear house for Burke." He denied having made any
such remark.   Proof was offered and admitted that, in
substance, he said this to Schumaker.   This is assigned
as error on the ground that the witness could not be
contradicted on a collateral matter not relevant to the
issue.   This question went to the interest or bias of Scott
as a witness.   The inquiry was proper of him, and when

he denied the remark the defendant was entitled to show that he said it. *Crippen v. People*, 8 Mich. 117; *Beaubien v. Cicotte*, 12 Id. 459; *Patten v. People*, 18 Id. 314; *Geary v. People*, 22 Id. 220; *Hamilton v. People*, 29 Id. 182.

The judgment is affirmed, with costs.

The other Justices concurred.