THOMAS ROSS ET AL. v. MCELWANE MINER ET AL.

[See 64 Mich. 204.]

*Fraudulent sale—Evidence—Proof of subsequent transactions.*

1. Fraud is seldom capable of direct proof. It must be established by facts and circumstances taken together, and the natural inferences to be drawn therefrom, which will satisfy the ordinary unbiased man, either as a juror, or outside the jury-box, that it exists.

2. Defendants Miner and Agnew, who had been engaged in the mercantile business as copartners in Corunna, removed to Detroit, where they formed a copartnership with one Kirby, and engaged in the retail grocery trade under the firm name of Kirby, Miner & Agnew. The new firm purchased a bill of goods of plaintiffs, and soon thereafter was dissolved by Kirby's withdrawal; Miner and Agnew assuming the firm debts, who mortgaged the entire stock to one Nichols to secure an alleged indebtedness, $1,700 of which existed before they came to Detroit. On the same day they made an assignment for the benefit of their creditors, and it took all the goods secured since coming to Detroit to pay said $1,700 of the Nichols claim.

    *Held,* that it was competent, on the trial of a suit in replevin brought to recover said goods, to show the *whole* business of Miner and Agnew, as far as it could be done, after they came to Detroit, and up to the time of the assignment, including the amount of goods purchased on credit, and of whom bought, and whether the vendors had any knowledge of the alleged indebtedness to Nichols; and to follow this line of inquiry by showing *what* their assets were when they came to Detroit, how much money, if any, they put into the business thereafter, the amount of their sales, and the disposition made of the proceeds, and their assets and liabilities on the day of their failure,—*all* as *tending* to show that their business in Detroit was but a scheme to acquire goods with which to liquidate an old debt, even if a valid one, or as rebutting such presumption.

3. In *such* a case, if the goods were bought with the intent never to pay for them, but to swallow them and all their other property by the Nichols mortgage, even though this debt was a valid one, it would be a fraud upon plaintiffs which would avoid the sale,

having an equal effect in law (as regards this suit) as if they had made false and fraudulent representations as to their financial standing at the time of such purchase.

Error to Wayne. (Jennison, J.) Argued October 20, 1887. Decided October 27, 1887.

Replevin. Plaintiffs bring error. Reversed. The facts are stated in the opinion, and in the opinion reported in 64 Mich. 204.

*Albert J. Chapman,* for appellants.

*Corliss, Andrus & Leete,* for defendants.

MORSE, J. The controversy in this case, and the principal facts relating thereto, are set out in the opinion filed when the cause was first brought before us. See 64 Mich. 204.

Another trial has taken place since then in the circuit, upon which trial the Hon. William Jennison directed a verdict for the defendants. He also shut out testimony tending to show the dealings of the defendants Miner and Agnew while in business at Detroit, and before they made a general assignment for the benefit of their creditors.

Plaintiffs sold certain teas on the sixteenth of October and twenty-fourth of November, 1884, to the firm of Kirby, Miner & Agnew. Their theory, as stated by their counsel upon the trial, was that Miner and Agnew came to Detroit from Corunna, for the express purpose of ostensibly starting a *bona fide* business as retail grocers, but really to get all the credit they could, and then use the goods, obtained by such credit, to pay a claim of A. T. Nichols.

There was evidence admitted sufficient to go to the jury to prove this fraudulent purpose. When Kirby went out of the firm, he only took out what he put in. The goods on hand at the time of the assignment brought some $400 or $500 less than Nichols' claim. On the third of December, Miner

and Agnew, without the knowledge of Kirby, mortgaged all their stock and fixtures to relatives, in the sum of $1,600. The next day the mortgage was discharged of record. The discharge stated that it was fully paid and satisfied. On the eleventh of December, Kirby having gone out of the firm, Miner and Agnew mortgaged the entire assets of the firm to Albert T. Nichols, for $2,201. One thousand seven hundred dollars of the notes which this mortgage purported to secure were in existence, by their dates, before the $1,600 mortgage was discharged and marked paid, and the notes were indorsed by the parties, or some of them, to whom the first mortgage was executed. This $1,700, if ever a good-faith debt, was owing to Nichols before Miner and Agnew came to Detroit. It would look as if the first mortgage was a sham transaction, and, if the debt to Nichols was *bona fide*, it would yet appear, as far as this record is concerned, that it took all the goods they secured after they came to Detroit to pay about the amount of their indebtedness to Nichols that existed before they left Corunna, and gives some color at least to the theory of the plaintiffs' counsel.

Fraud is seldom capable of direct proof. It must be established by facts and circumstances taken together, and the natural inferences to be drawn therefrom, which will satisfy the ordinary unbiased man, either as a juror, or outside of the jury-box, that it exists. It was competent to show the whole business of Miner and Agnew, as far as it could be done, after they came to Detroit, and up to the time of the assignment. It was proper, to this end, to show how many goods they purchased on credit, and of whom they purchased them, and whether the parties with whom they dealt had any knowledge or not of this alleged indebtedness to Nichols. This could be followed up by showing what their assets were when they came to Detroit, how much money, if any, they put in the business thereafter, how many goods were sold, and what was done with the proceeds thereof, and what were

their assets and liabilities upon the day of their failure, as tending to show that their business in Detroit was but a scheme to acquire goods with which to liquidate an old debt, even if it was a valid one, to Nichols, or as rebutting such a presumption. Great latitude in the search for fraud must necessarily be allowed, or the ends of justice are liable to be defeated. If the debt to Nichols was a valid one, and their business in Detroit an honest venture, such an investigation, with the explanations the defendants themselves could furnish, could not harm them.

On the other hand, if they bought the teas of plaintiffs with the intent never to pay for them, but to swallow them and all their other property by this mortgage to Nichols, even though his debt was a valid one, it would be a fraud upon plaintiffs which would avoid the sale of the teas.

And we know of no better way to ascertain the truth than that above indicated, and which plaintiffs' counsel undertook to do when he offered the testimony of Donnan and others to show how many goods they sold defendants Miner and Agnew, and whether or not they had any knowledge of the Nichols indebtedness. The testimony was improperly rejected.

Frank E. Smith, who sold the teas as agent of plaintiffs, testifies that he knew nothing of this indebtedness when he sold the goods. He afterwards discovered this first mortgage of $1,600, and went to see Miner and Agnew about it. They told him that this mortgage had been discharged, and that there was no other indebtedness against them. This was a false statement, if the Nichols mortgage secured a valid debt, as shown by the notes. This was, also, a circumstance tending to show fraud from the beginning.

Upon the testimony admitted and in the case, there being no evidence on the part of the defendants explaining these transactions, the plaintiffs should have been permitted to submit the question of fraud to the jury.

It is contended on the part of the defendants that, as this stands admitted that the defendants made no representations of their financial standing at the time the teas were sold, there was no fraud practiced upon them at that time, and that there was no evidence tending to show any intent on the part of defendants at that time to defraud plaintiffs.

We think we have disposed of this argument in what we have already said. If they bought the goods intending never to pay for them, and intending to get rid of such payment by the interposition of this Nichols mortgage between the plaintiffs and defendants' assets, then it would be a fraud upon plaintiffs, having an equal effect in law, as regards this suit, as if they had made false and fraudulent representations as to their financial standing at the time they bought the teas.

The judgment of the circuit court for the county of Wayne must be reversed, with costs, and a new trial granted.

SHERWOOD and CHAMPLIN, JJ., concurred.

CAMPBELL, C. J., did not sit.