MARGARET L. HAINES, PROPONENT, v. ALICE I. HAYDEN, CONTESTANT.

*Will—Mental incompetency—Undue influence—Evidence—Subsequent declarations, facts, and circumstances.*

1. Declarations of a testator, made before and after the making of the will, may be given in evidence for the purpose of showing his state of mind when the will was made, the latter being admissible for the reason that the condition of mind ascertained at the subsequent date may be presumed to have existed at a prior time; citing *Waterman v. Whitney,* 11 N. Y. 157; *Beaubien v. Cicotte,* 12 Mich. 459; *Harring v. Allen,* 25 Id. 505; *Mooney v. Olsen,* 22 Kan. 69.

2. Evidence of subsequent declarations is admissible as tending to show the fact that the influence exerted accomplished its improper purpose, and subjected the testator's will to that of the beneficiary, in the absence of such a change in the relations of the parties as renders such testimony inadmissible.

3. There cannot well be a middle ground between the doctrine held in some cases, that, to render subsequent declarations admissible, they must be made so near the date of the will as to be a part of the *res gestœ,* and the rule to be deduced from the Michigan cases, that such declarations are admissible in any case where the fair inference, from all the circumstances, is that they truly represent the testator's state of mind at the time the will was made.

4. Where a will is contested on the ground of undue influence, and the proponent relies upon the presumption of its validity arising from its non-destruction by the testator during a period of years, and offers testimony tending to show the declarations of the testator that he had made the will, and that it could not be broken, and his directions to the proponent to resist any attempt to break it, it is competent for the contestant to introduce testimony relating to the subsequent conditions and declarations of the testator, and to proponent's dominion over him, for the purpose of weakening said presumption, and of showing that the non-destruction of the will and said declarations were the result of or made while the testator was under

the same dominion as was exerted when the will was made.

5. The law permits facts and circumstances occurring after the execution of a will to be shown relating to the condition of the testator's mind, and the question of fraud and undue influence claimed to have been exercised over him, for the purpose of proving, by inference or otherwise, that the same conditions existed before and at the time of its execution as existed afterwards on those points.

6. Testimony relating to subsequent facts and circumstances and declarations, tending to show the state of mind of the testator at the time of making the will and the fact of undue influence, is not rendered incompetent by evidence showing that the testator was suffering senile decay, such evidence going to the sufficiency of the testimony.

7. A will which is obtained by fraud in the first instance is void, and nothing short of a republication will make it valid.

Error to Kent. (Adsit, J.) Argued January 31, 1893. Decided April 21, 1893.

Appeal from the probate of a will. Proponent brings error. Affirmed. The facts are stated in the opinion.

*Dunham & Preston,* for appellant.

*Alfred Russell,* of counsel for appellant, contended:

1. The merits of the case, on the part of the proponent, are such that the Court should reverse the judgment below, without ordering a new trial, but directing probate; citing *Lewis v. Railway Co.,* 56 Mich. 638; *Cole v. Rowen,* 88 Id. 224; *Severance v. Severance,* 90 Id. 424; *Eddey's Appeal,* 109 Penn. St. 406; *Wilson v. Mitchell,* 101 Id. 495; *Wainwright's Appeal,* 89 Id. 220; *Cauffman v. Long,* 82 Id. 72.

2. Where a will has been a long time in existence and under the control of the testator, undestroyed, uncanceled, and unrevoked, a court will not set it aside on the mere ground that it was originally obtained through undue influence; citing Jar. Wills (5th Amer. ed.), 142, 143; *Small v. Small,* 4 Greenl. (Me.) 220; and, where one has made a will while under the influence of fear or compulsion, he may so ratify and confirm it after all apprehension is removed as to render it valid; citing Red. Wills, 514; 1 Jar. Wills (3d Amer. ed.), 38; *O'Neall v. Farr,*

1 Rich. (S. C.) 80; and a will made when fraud is used may, nevertheless, be shown to be the free act of the party, by proof of statements in which the will and its provisions are approved, made when relieved of any improper influence; citing *Shailer v. Bumstead*, 99 Mass. 112.

3. The constraint which will avoid a will must operate upon the testator in producing the very act of making his will; citing *Pierce v. Pierce*, 38 Mich. 419.

4. The testator has the right of disinheriting his children upon any grounds satisfactory to himself; but in this case the contestant was not disinherited, but a reasonable provision was made for her, although not so great as was made for the proponent, and the trust imposed upon the proponent was capable of being enforced in equity; citing *Colton v. Colton*, 127 U. S. 300; and where capacity, formal execution, and volition all appear, no tribunal can pronounce against a will because of its disapprobation, however strong it may be, of the dispositions made by the testator; citing Red. Wills, 527; *Dean v. Negley*, 41 Penn. St. 312; *Eckert v. Flowry*, 43 Id. 46; *Earl of Sefton v. Hopwood*, 1 F. & Fin. 578.

5. Declarations of the testator, made before the will, on principle, are mere hearsay; citing *Horn v. Pullman*, 72 N. Y. 278; but, if let in, they must be so near its execution as to constitute a circumstance surrounding the will, and even then are not allowed when the testator was of sound and vigorous mind; citing Red. Wills, 528; *Tunison v. Tunison*, 4 Bradf. Sur. 138.

6. There can be no doubt that all the cases which permit testimony of the testator's declarations before and after the execution of the will, when not a part of the *res gestæ*, are a departure from principle; citing 1 Phil. Ev. 185; Taylor, Ev. § 589; 2 Greenl. Ev. § 690.

7. The general doctrine is laid down by Judge Redfield, in accord with the above authors, that the declarations of the testator after the will, tending · to establish the existence of undue influence in its procurement, where the force of the evidence depends upon the veracity of the testator in making such declarations, are not admissible. Such declarations are mere hearsay evidence, and are to be tested by the same rules as other hearsay evidence; citing Red. Wills, 544, and cases cited.

8. There is nothing in the Michigan cases, when properly considered, which interferes with the positions we have taken above, or which would justify the submission of this case to the jury;

citing *Beaubien v. Cicotte*, 12 Mich. 459; *White v. Bailey*, 10 Id. 155; *Pierce v. Pierce*, 38 Id. 412; *Harring v. Allen*, 25 Id. 505; *Potter's Appeal*, 53 Id. 106; *Wallace v. Harris*, 32 Id. 394; *Porter v. Throop*, 47 Id. 313; *Wurzell v. Beckman*, 52 Id. 478.

9. In further considering subsequent declarations with the subject of progressive decay, counsel cited *Boylan v. Meeker*, 28 N. J. Law, 274; *Waterman v. Whitney*, 11 N. Y. 157; *Rusling v. Rusling*, 36 N. J. Eq. 603, *Herster v. Herster*, 122 Penn. St. 239; *Shailer v. Bumstead*, 99 Mass. 112; *Batchelder v. Batchelder*, 139 Id. 1; *In re Hess' Will*, 48 Minn. 504.

10. Testator's belief or doubt as to contestant's legitimacy, founded on apparent grounds, was not an insane delusion; citing *Clapp v. Fullerton*, 34 N. Y. 190; *Chafin Will Case*, 32 Wis. 558; *Will of Cole*, 49 Id. 179; *Will of Blakely*, 48 Id. 294; *Will of Jackman*, 26 Id. 104; *Will of Ladd*, 60 Id. 187; *Potter v. Jones*, 20 Oreg. 239.

*Blair, Kingsley & Kleinhans,* of counsel for appellant, contended:

1. Where a person is induced by false evidence, or by false statements, to believe a fact alleged to exist which does not exist, and where the evidence is wholly insufficient to prove the truth of what he believes, yet he sticks to his belief that the supposed fact exists, which in reality has no existence whatever, this is in no sense a delusion or monomania; it simply shows that his belief is wanting in discernment, or that he lacks the ordinary powers of discrimination, and is easily duped; but this does not show that his mind is unsound, nor subject to a delusion, as applied to insanity, nor that he is a monomaniac; citing *Middleditch v. Williams*, 45 N. J. Eq. 726.

2. Violent and unreasonable prejudice against a person is not enough to set aside a will; citing *Will of White*, 121 N. Y. 406; nor, even if Brown believed Alice was not his child, would this be enough, because he might have so believed from some false evidence. It was necessary to go further on this point, and show that Margaret had fraudulently made him believe so, or that Brown had no evidence whatever, but was laboring under an insane delusion. If he was not insane on this point, and Margarat did not poison his mind, yet if he believed Alice illegitimate from outside evidence, no matter

how fragile or unsubstantial, his will would still be good; citing *Clapp v. Fullerton*, 34 N. Y. 190.

3. By the weight of authority, and upon principle, subsequent declarations are admissible, when made *within a limited time*, for the sole purpose of denoting the mental condition of the will-maker at the time the will was made; citing *Mason v. Williams*, 6 N. Y. Supp. 479; *Harring v. Allen*, 25 Mich. 505; *Waterman v. Whitney*, 11 N. Y. 157; *Comstock v. Society*, 8 Conn. 254; *Thompson v. Kyner*, 65 Penn. St. 368; *Boylan v. Meeker*, 28 N. J. Law, 274; *In re Hess' Will*, 48 Minn. 504; 1 Jar. Wills (5th Amer. ed.), 135, 136.

4. On the question when the court "will allow the jury to infer backwards, by a sort of reflex action, from subsequent facts and circumstances, that undue influence existed at a prior time," counsel cited *Herster v. Herster*, 122 Penn. St. 239; *Shailer v. Bumstead*, 99 Mass. 112; *Rusling v. Rusling*, 36 N. J. Eq. 603.

5. The fact that a will, duly executed by a competent person, remains unrevoked for a long time, is evidence that it was fairly executed; and a will procured by fraud may yet be shown to be the free act of the party by proof of full approval of the will after the improper influences have disappeared, and this without going through the form of republication; citing *Shailer v. Bumstead*, 99 Mass. 112; 1 Jar. Wills (5th Amer. ed.), 143; and where a will is good when executed, but the testator, wanting to revoke it or make a new one, is by the fraud of a designing legatee prevented from so doing, such question cannot be raised in a contest over the validity of the original will, but resort must be had to equity, which will declare the fraudulent legatee a trustee for the benefit of the persons injured; citing 2 Pom. Eq. Jur. §§ 919, 1053, 1054.

*C. H. Gleason*, for contestant.

*Smiley, Smith & Stevens*, of counsel for contestant, contended:

1. Where the mental capacity of a testator is in question, and where undue influence is sought to be established, it is competent to give in evidence the declarations of the decedent to show that the disposition of his property by the writing which is propounded for probate is in opposition to his intention as manifested by his repeated declarations upon the subject for

many years before and up to about the time of the making of the contested will; citing *Neel v. Potter*, 40 Penn. St. 483; *Pancoast v. Graham*, 15 N. J. Eq. 309; *Turner v. Cheesman*, Id. 265; *Dye v. Young*, 55 Iowa, 433; *Lamb v. Lamb*, 105 Ind. 456; *Staser v. Hogan*, 120 Id. 207; *Conway v. Vizzard*, 122 Id. 266; *Harwood v. Baker*, 3 Moore, P. C. 282; *Kevil v. Kevil*, 2 Bush, 614; *Denison's Appeal*, 29 Conn. 399; *Converse v. Wales*, 4 Allen, 512; *Rambler v. Tryon*, 7 Serg. & R. 90.

2. There is good authority for the proposition that, where a will is grossly unequal and unjust in its provisions regarding the natural objects of the testator's bounty, the law casts upon the proponent the burden of showing the reason for such inequality and of disproving undue influence. This Court approved such a charge to the jury in the case of *Porter v. Throop*, 47 Mich. 313. But all of the cases at least hold that such gross inequality may be considered by the jury in connection with other testimony, where the will is contested on the ground of undue influence or mental incapacity; citing *Bitner v. Bitner*, 65 Penn. St. 347; *Lynch v. Clements*, 24 N. J. Eq. 431; *Munday v. Taylor*, 7 Bush, 491; *Kevil v. Kevil*, 2 Id. 614; *Harrel v. Harrel*, 1 Duv. 204; *Tobin v. Jenkins*, 29 Ark. 151; *Lamb v. Lamb*, 105 Ind. 456; *Conway v. Vizzard*, 122 Id. 266; *Davis v. Calvert*, 5 Gill & J. 269; *Salisbury v. Aldrich*, 118 Ill. 199; *Ross v. Christman*, 1 Ired. 209; *Mitchell v. Mitchell*, 43 Minn. 73; *Myers v. Hauger*, 98 Mo. 433; *Hartman v. Strickler*, 82 Va. 225.

3. It is a proposition which needs no argument in its support, that, the feebler the mind, no matter from what cause, the less evidence will be required to invalidate the will of such a person on the ground of undue influence; citing *Reynolds v. Adams*, 90 Ill. 134.

4. Where there is evidence tending to show some mental incapacity, and also evidence tending to show some undue influence, it is easier to satisfy the court that undue influence has been exerted, inasmuch as the degree of influence required to induce a person of strong mind and in good health to do any act is much greater than that which would induce a person of feeble mental capacity and in a weak state of health; citing *Hampson v. Guy*, 64 L. T. R. N. S. 778.

5. An aged man, with perception blunted and memory impaired, readily falls into a state of dependence upon those surrounding

95 Mich.—22.

him, and insensibly the will of such persons is substituted for his will; citing McClell. Sur. Pr. (3d ed.) 123, 124; *Reichenbach v. Ruddach,* 127 Penn. St. 564; *Myers v. Hauger,* 98 Mo. 433; *Hartman v. Strickler,* 82 Va. 225.

6. A delusion is said to exist when a person conceives something extravagant to exist which has no existence whatever except in the imagination, and the person is incapable of being permanently reasoned out of that conception; citing *Dew v. Clark,* 3 Add. Ecc. 79; Busw. Insan. § 13; Browne, Insan. § 24; Ray, Insan. §§ 169, 298; and see *Robinson v. Adams,* 62 Me. 369; *Woodbury v. Obear,* 7 Gray, 472; *Singleton v. Singleton,* 8 Dana, 315; *Society v. Price,* 115 Ill. 623; *Dunham's Appeal,* 27 Conn. 192; *Pelamourges v. Clark,* 9 Iowa, 1; *Bitner v. Bitner,* 65 Penn. St. 347.

7. A morbid and insane delusion on the part of·a person towards the natural objects of his bounty, which causes him to make a different will than he otherwise would, has been held enough to invalidate the will; citing *Roe v. Taylor,* 45 Ill. 485; *Meeker v. Meeker,* 75 Id. 260; *Lucas v. Parsons,* 27 Ga. 608; *Johnson v. Moore,* 1 Litt. (Ky.) 371; 1 Jar. Wills, *38; Busw. Insan. § 381; Bouv. Law Dict. tit. "Will;" *Boughton v. Knight,* 42 L. J. Pro. 25, 3 L. R. Pro. & Div. 64, 28 L. T. R. N. S. 562.

8, The courts of the states and of England universally hold that in the contest of a will on the ground of mental incapacity or undue influence, or both, the declarations of the testator, both before and after the date of the will, are competent evidence to show:

*a*—His mental capacity at the date of making the will, whether they show him generally incompetent mentally, or only mentally feeble, so as to be the easy victim of designing persons, who unduly influence or practice fraud upon him.

*b*—The affections and long-cherished purposes of the testator, the influences by which he was surrounded, and his susceptibility to them.

*c*—The mental development of the testator before and after the will, for the existence of some forms of mental weakness often implies that the weakness must have existed for a considerable time previous.

*d*—The effect upon the mind of the testator of. the undue influences shown by other facts and circumstances to have

been working upon him, and that the influences existing when the alleged will was made continued to operate.

There is no general rule fixing the time before or after the making of the will within which such declarations must have been made in order to be admissible. The facts and circumstances of each particular case must govern their admissibility; citing *Shailer v. Bumstead*, 99 Mass. 112, and cases cited; Schouler, Wills, § 243, and cases cited; *Harring v. Allen*, 25 Mich. 505; *Porter v. Throop*, 47 Id. 313; *Rollwagen v. Rollwagen*, 63 N. Y. 519; *Cudney v. Cudney*, 68 Id. 148; *May v. Bradlee*, 127 Mass. 414; *Potter v. Baldwin*, 133 Id. 427; *Reynolds v. Adams*, 90 Ill. 147; *McTaggart v. Thompson*, 14 Penn. St. 149.

*Uhl & Crane,* of counsel for contestant, contended:

1. A wide range of inquiry into the relations of the testator and his family, and the terms upon which they lived, is competent in cases involving testamentary capacity, fraud. and undue influence; citing *Beaubien v. Cicotte*, 12 Mich. 459; *Porter v. Throop*, 47 Id. 313; *Potter's Appeal*, 53 Id. 106; *Baldwin v. Robinson*, 93 Id. 438.

2. Declarations of the testator which are introduced as evidence of what he thought, or of his mental capacity, are of the best kind of evidence; citing *Waterman v. Whitney*, 11 N. Y. 157; *Cudney v. Cudney*, 68 Id. 148; *Denison's Appeal*, 29 Conn. 399; *Canada's Appeal*, 47 Id. 450; *Beaubien v. Cicotte*, 12 Mich. 459; *Harring v. Allen*, 25 Id. 505; *Shailer v. Bumstead*, 99 Mass. 112, 126; *Lewis v. Mason*, 109 Id. 169; *May v. Bradlee*, 127 Id. 414; *Potter v. Baldwin*, 133 Id. 427; *Mooney v. Olsen*, 22 Kan. 69; *Moore v. McDonald*, 68 Md. 321.

3. Proof which is direct and positive is not required upon an issue of fraud and undue influence; it may be maintained by circumstantial evidence; citing *Beaubien v. Cicotte*, 12 Mich. 488; *Porter v. Throop*, 47 Id. 313; *Potter's Appeal*, 53 Id. 106; *Schofield v. Walker*, 58 Id. 96.

4. The jury may consider the provisions of the will, together with the mental capacity of the deceased, in determining whether or not undue influence was exercised; citing *Patterson v. Patterson*, 6 Serg. & R. 55; *McGinnis v. Kempsey*, 27 Mich. 363; *Porter v. Throop*, 47 Id. 313; *Cudney v. Cudney*, 68 N. Y. 148; *In re Budlong*, 126 Id. 423; *Griffith v. Diffenderffer*, 50

Md. 466; *In re Convey*, 52 Iowa, 197; *McCommon v. McCommon*, 31 N. E. Rep. 491.

5. The issues before the jury involved fraud and undue influence; and any evidence, however slight, tending to prove these issues, was competent; citing *Davis v. Calvert*, 5 Gill & J. 303, 304; *Beaubien · v. Cicotte*, 12 Mich. 459; *Porter v. Throop*, 47 Id. 313; *Potter's Appeal*, 53 Id. 106; *Clark v. Stansbury*, 49 Md. 346.

6. Evidence that the principal legatee, by false representations, influenced the testator in the disposition of his property, makes out a case of fraud and undue influence; citing *Davis v. Calvert*, 5 Gill & J. 269; *Tyler v. Gardiner*, 35 N. Y. 559; *In re Budlong*, 126 Id. 423; *Baldwin v. Robinson*, 93 Mich. 438.

MONTGOMERY, J.   On the 25th day of June, 1891, James H. Brown died, at the age of 84, leaving an estate amounting to about $160,000.   He had on the 10th day of February, 1881, executed in due form an instrument as and for his last will and testament, which was duly admitted to probate in the probate court.   On appeal to the circuit court of Kent county a contest was made on the two grounds of mental incapacity of the testator, and undue influence exerted by the proponent, Margaret L. Haines.

The proponent and contestant are full sisters.   At the time of the execution of the will the wife and mother was still living, and the natural objects of the testator's bounty were the aged and invalid wife, and the two sisters who are here litigants.   When the will was made Mrs. Hayden was a resident of Denver, Col., and Mrs. Haines was a widow, her former husband, Mr. Rogers, having died in 1880.   She continued to reside at Grandville, a few miles from the city of Grand Rapids, the testator's home.   The will, as drawn, contained the following provision:

"I give and bequeath to my said daughter Margaretta L. Rogers $10,000, in trust for the benefit of my daughter Alice I. Hayden, wife of Charles Hayden, now living at Denver, in the state of Colorado, to be used by my said daughter Margaretta L. Rogers for the benefit and support and maintenance of my said daughter Alice I Hayden

during her natural life, after the death of the said Charles Hayden, her husband, and at any time when from personal injury or ill health he shall be unable to support his wife during his life-time, and to be paid to the said Alice I. Hayden under the circumstances and upon the contingencies last above mentioned, in sums and at such times as in the judgment of my said daughter Margaretta L. Rogers the said Alice I. Hayden may need the same; and after the death of the said Alice I. Hayden I give and bequeath the said sum of $10,000, or what shall remain of the same at that time, to the said Margaretta L. Rogers, her heirs and assigns, forever."

The wife was given, in lieu of dower and statutory allowances, some small items of personal property in the house, and what money should be in the house at the time of the testator's death, the use of the homestead during her life, and a further provision of the will was a bequest of $5,000 to Margaret, in trust for the benefit of the wife during her life, the residue to go to Margaret. The remainder of the estate was bequeathed absolutely to Margaret, and she was named as one of the executors of the will. An agreement was drawn, bearing the same date, which provided that Hon. J. W. Ransom was to act as managing executor, and account to Margaret. This agreement was signed by Margaret within a day or two of the execution of the will.

Both the question of undue influence and mental incapacity were submitted to the jury, and a general verdict against the will returned. The proponent appeals, and assigns error upon rulings as to the admissibility of testimony, upon the charge of the court, and upon the refusal of the court to charge as requested. The assignments number 429. Many of them have been abandoned, and such others of them as we think important can be grouped in a manner which will lead to an understanding of the questions involved.

It is first contended that there was no testimony in the

case having a legitimate tendency to show that the testator was mentally unsound at the time of the execution of the will, in 1881, or that he was a monomaniac upon the subject of Alice's legitimacy; and in this connection it is urged that the two theories of contestant, namely, that the deceased was possessed of an insane delusion on the subject, and that Margaret had so poisoned her father's mind as to induce belief in her false claim as to Alice's legitimacy, are at variance. It is claimed that, even if there was evidence of insane delusion, yet under the instructions of the court the jury were permitted to treat a mistake of fact induced by false evidence as amounting to a delusion. It is also claimed that the court erred in allowing too wide a range to contestant in the introduction of testimony as to the declarations of the testator after the making of the will, and that such inquiry should be limited to a period so near the date of the execution as to form a part of the *res gestæ.* It is also claimed that subsequent facts and circumstances were introduced, and that these were incompetent. It is contended that even if the testimony tending to show subsequent evil influences be admissible to rebut an inference of subsequent ratification, or to overcome an inference in favor of freedom of action, to be drawn from the fact that the will was not destroyed, yet such testimony is not competent to be considered by the jury as tending to prove the original exercise of undue influence, and that in the present case the jury were permitted to consider it for that purpose and for all purposes; and also that changed conditions rendered the testimony incompetent to prove by inference undue influence.

The case as made out by the contestant was most extraordinary. The contestant's theory is that, when this instrument was made, Mr. Brown had become possessed of the notion that Alice was not his daughter, and that this idea was either an insane delusion, or that such belief was in-

duced by the proponent, who had, with the purpose of inducing him to disinherit her sister, poisoned her father's mind by concocting a story to the effect that many years before, and within a year prior to the birth of Alice, while the family resided at Adrian, she (Margaret), upon returning from school one day, discovered her mother and one Dr. Hoyt lying on the bed together in a compromising position.

The evidence offered on behalf of contestant tended to show that the testator up to and during the year 1880, the occasion of her last visit home prior to the making of the will, was very affectionate towards her, and that she was apparently his favorite as between the two daughters; that, prior to the time of making the will, deceased had repeatedly declared that he did not intend to make a will, and, in effect, that he expected his property to go to his children in equal parts; that, on the occasion of the visit at Grand Rapids in 1880 she, in confidential conversation with her sister, stated that she hoped her mother would outlive her father, as her father would be likely to marry again, and she thought her mother would not; that in this same conversation the proponent told contestant that her father was an unchaste man, that he had been intimate with two of her aunts, and also that her mother was unchaste, that she had been criminally intimate with Dr. Hoyt, and that she (Alice) was the daughter of Dr. Hoyt; that at about this time the deceased commenced to visit his daughter Margaret at Grandville more frequently than before, and that upon the occasion of these visits he would return to his home morose, sullen, and irritable, and would avoid the society of his wife; that he visited Margaret the Sunday before the will was made, and that, when he went to Mr. Ransom to have the will drawn, it was with the purpose of entirely disinheriting his daughter Alice; that.

he was only induced by Mr. Ransom to make for her the uncertain provision finally incorporated as above quoted; that he afterwards told Mr. Ransom, under circumstances which may well lead to the inference that it was offered as explanatory of the terms of the will, that Alice was not his daughter; that no other source is shown for the origin of this story than Margaret; that Margaret herself testified in the probate court that she did, within a year prior to Alice's birth, witness conduct on the part of her mother and Dr. Hoyt from which an inference of Alice's illegitimacy could fairly be drawn; that she denied having ever repeated the story except to her first husband, who died in 1880; and that the testator from this time on showed a coolness towards Alice, and avoided private conversation with her on her subsequent return to Grand Rapids; that on one occasion he asked her if she had told Margaret that she wished him dead; that she denied the story, and asked that she might be taken to Margaret, that she might deny the story to her, but her father dissuaded her; that Margaret often visited the city, and held conversations with her father outside of the house, and did not call upon her mother; that deceased said to others that Alice was not his daughter; and that Margaret afterwards did in fact tell her father the same thing repeatedly in the presence of Mr. Brown's nephew, who was his attendant in the later years of his life. Some of these facts were denied, but many of them stand uncontradicted on the record. Under these circumstances the contestant claims that the notion of which Mr. Brown seemingly became possessed was either an insane delusion, or was created by Margaret with the purpose of inducing her father to disinherit Alice.

It is contended that these two positions are inconsistent. It is said in counsel's brief:

"If either is true, the other is not, under the special

circumstances here presented, as neither good nor evil influence can be exercised over a crazy man on the very subject of his hallucination."

But, as was well said in *Woodbury v. Obear*, 7 Gray, 472, by Chief Justice Shaw:

"In the case of monomania and insane delusion, a person by artful, false, and repeated surmises and insinuations, operating upon a sensitive and excitable mind of another, may foster and exasperate, if not create, an insane delusion, and at the same time, and by the same means, obtain such an influence over him as to induce him to make a will, or do any other act which he would not have done but for the existence of the insane delusion, and the undue influence concurring with it."

In the present case the undue influence did not consist alone in the statement as to Alice's illegitimacy, as is claimed by proponent, but other untruthful statements are claimed to have been made reflecting on her. But in any view it does not lie with Margaret to assert that the contestant's theory removed the question of mental delusion from the case. Contestant proved that the deceased did become possessed with the belief that Alice was not his child. The only source from which any evidence, convincing or otherwise, could have been derived, so far as this case shows, was Margaret, and she on oath denied having communicated it to any one who could in turn communicate it to her father at a time when the effect produced could have followed. If her story was true, there was strong evidence to show the existence of delusion, and she cannot predicate error on the assumption of its falsity; but, if it fails, an inference equally strong that she made use of this story with her father arises.

Was there any testimony tending to show the existence of the insane delusion at the time of the making of this will? It is conceded that the theory of Alice's illegitimacy and Mrs. Brown's infidelity are unfounded in fact, and

Margaret, the only person who has raised a fair suspicion of Alice's legitimacy, denies having communicated the circumstance, known only to her, to her father. We have then a case here of a father, 35 years after the birth of his child, whom he has always treated as his own and with marked affection, conceiving all at once that she is a bastard. It is true that there is no evidence of the testator's prior declarations to this effect, but there is the fact that he practically disinherited her, and the further fact that he afterwards told his confidential advisor, who drew the will, that she was not his child, under circumstances fairly justifying an inference that he gave this statement to Mr. Ransom in explanation of his unnatural purpose to disinherit her. These and other similar declarations made after the making of the will were competent to show the existence of the delusion at that time. The rule is well settled that evidence of declarations of the testator both before and after the making of the will may be given for the purpose of showing the state of mind of the testator. Subsequent declarations are admissible for the reason that the condition of mind ascertained at a date subsequent to the execution of the will may be presumed to have existed at a prior time. *Waterman v. Whitney,* 11 N. Y. 157; *Beaubien v. Cicotte,* 12 Mich. 459; *Harring v. Allen,* 25 Id. 505; *Mooney v. Olsen,* 22 Kan. 69.

The testimony relating to the subsequent conditions and declarations of the testator, and the continuous dominion over him, was admissible for the purpose of weakening the presumption of the validity of the will to be drawn from its non-destruction during the period of 10 years. The proponent relied upon this presumption, and also offered testimony tending to show the declarations by the testator that this will had been made by him and could not be broken, and evidence of directions to Margaret to resist any attempt to break the will to the utmost. It was

clearly competent to meet this inference as well by this affirmative showing as by testimony to show that such non-destruction, as well as such affirmative directions, were made while under the same delusion or dominion as existed or was exerted when the will was made.

Is evidence of subsequent declarations admissible as tending to show the fact that the influence exerted accomplished its improper purpose, and subjected the testator's will to that of the beneficiary? It is difficult to perceive why, on principle, such testimony is not to be received for this purpose. The state of the testator's mind at the very time of the execution of the will is, it is of course clear, the question to be solved; but it very rarely occurs that this state of mind can be shown by declarations made at the very moment of the execution of the will. To use the contestant's theory in this case as an illustration, we find Mr. Brown suddenly growing cool towards his favorite daughter; we find him possessed of the belief in her illegitimacy,—a belief engendered by Margaret, as the only person who had either the alleged *data* or the influence with him to induce such belief,—while the relations between him and Margaret remained the same. While there is no material change in circumstances, he declares the existence of this belief in his mind. May this not be received as tending to thow that he held this belief when he made the will? Counsel criticise the rule, as giving reflex action to such testimony. But if the existence of the insane delusion may thus be shown, why not the existence of a sane belief induced by fraud? The authorities sustain the ruling of the trial judge on this point. *Porter v. Throop,* 47 Mich. 313; *Beaubien v. Cicotte,* 12 Id. 459.

It is strenuously insisted, however, that the present case is distinguishable from *Porter v. Throop,* in that the period covered by the subsequent testimony was longer in

this case, and, further, that the circumstances in the Porter case remained the same, while in the present case they were changed; that Margaret had remarried, and come to live with the father; that the mother had died; and that the testator's mind had become weakened. There cannot well be a middle ground between the doctrine held in some cases, that, to render such declarations admissible, they must be made so near the date of the will as to be a part of the *res gestæ*, and the rule to be deduced from *Beaubien v. Cicotte*, *Harring v. Allen*, and other Michigan cases, that such declarations are admissible in any case where the fair inference, from all the circumstances, is that they truly represent the testator's state of mind at the time the will was made. We think, under the circumstances of the present case, there was no such change in the relations of the parties as rendered such testimony inadmissible. The testimony offered by the contestant tended strongly to show that Margaret's dominion over her father began in 1880, and was continued down to the time of his death.

The most serious question in this case is whether such testimony was admissible for the purpose of showing that the will was induced by fraud and undue influence exerted at the time. It is the theory of the contestant that the belief in her illegitimacy had been induced before the will was made; that this belief was kept alive by Margaret from that time on; that all these transactions were connected so closely as to constitute really one continuous effort by Margaret to create and to fan and to keep alive this belief to her profit, by first causing the will to be made, and by thereafter preventing its revocation by the same means; and that all that was done in this regard was simply in furtherance of one fraudulent scheme, which related, not only to the inducing of the will, but the prevention of its revocation.

In *Cook v. Perry*, 43 Mich. 626, Cook was charged with having made fraudulent representations as to the character and ownership of certain lands. Evidence was offered of subsequent statements made by Cook, which constituted substantially a repetition of the representations previously made, and which were relied upon as evidence of fraud. The Court say:

"It is obvious that it could not be used as substantive proof of the alleged false statements constituting the fraud and causing the injurious result. The mischief had been done, and it could not possibly be charged to subsequent falsehoods. But evidence which is not admissible for one purpose is often lawful for another, and it is not uncommon to make proof of matters occurring after the consummation of the wrong in order to identify the agency which produced it, or fortify the antecedent indications."

In the present case all the facts and circumstances occurring after the making of the will were facts and circumstances with which Margaret was connected, and were admissible as tending to identify the agency which produced the original result, and as tending to fortify antecedent indications.

The case of *Porter v. Throop* is also instructive upon this point. In that case the fact of undue influence in procuring the will was established in the main by testimony showing the subsequent facts and circumstances with which the party concerned in exerting the undue influence was connected. In fact, the circumstance chiefly relied upon by Mr. Justice COOLEY, in reaching the conclusion that there was undue influence, occurred two years after the will was made. This decision has been vigorously criticised by counsel, but the case was ably argued by eminent counsel, and was undoubtedly given the usual profound consideration accorded to cases written by Mr. Justice COOLEY, and we should hesitate long to overthrow the doctrine of the case. We think the doctrine of *Porter v. Throop* is

but an application of the general rules adopted in numerous decisions in this State relating to what is requisite as proof of fraud.

In *O'Donnell v. Segar*, 25 Mich. 367, 378, CHRISTIANCY, C. J., said:

" The jury were told they could not infer fraud, and that it could not rest upon implication. We know of no such rule of evidence in reference to the question of fraud. It is, like any other fact, to be proved by any facts and circumstances which satisfy the mind of its existence, and may be, and generally is (when found), inferred from circumstances, and cannot often be proved in any other way."

In *Ross v. Miner*, 67 Mich. 410, 412, it is said by Mr. Justice MORSE:

" Fraud is seldom capable of direct proof. It must be established by facts and circumstances taken together, and the natural inferences to be drawn therefrom, which will satisfy the ordinary unbiased man, either as a juror or outside the jury-box, that it exists."

In *Prentis v. Bates*, 93 Mich. 239, it was said:

" We think this Court has never evinced the purpose of creating one rule of evidence which shall apply in will cases, but which is not to be adopted in any other."

The charge of the learned circuit judge upon that subject was as follows:

"If, however, you find that the will was valid at the time of its execution, it remained valid and is valid now, unless it has been revoked, which is not claimed by the contestant. The condition of the mind of the testator, nor any undue influence exercised over him after the execution of the will, could not invalidate it, and no such claim is made in this case. The law permits, however, the facts and circumstances occurring after the execution of the will to be shown relating to the condition of the testator's mind, and the question of fraud and undue influence claimed to have been exercised over him, for the purpose of proving, by inference or otherwise, that the same conditions existed before and at the time of

the execution of the will as existed afterwards on these points."

We think this charge comes within the ruling of the case of *Porter v. Throop*, and should be sustained.

It is urged that the evidence shows that the testator was suffering senile decay, and that this fact renders incompetent much of the testimony relating to subsequent facts and circumstances and subsequent declarations, tending to show the state of mind of the testator at the time of making the will, and the fact of undue influence. The record discloses that there was a gradual weakening of mental power of the testator after the making of the will, and it is claimed by the contestant that this weakening antedated the making of the will, and that the testimony was sufficient to justify a finding to that effect. Did this fact of senile decay render testimony relating to subsequent acts or declarations inadmissible? The cases relied upon to support the contention of the proponent are *Rusling v. Rusling*, 36 N. J. Eq. 603; *Herster v. Herster*, 122 Penn. St. 239 (16 Atl. Rep. 342); *Shailer v. Bumstead*, 99 Mass. 112.

In *Shailer v. Bumstead* the will was made in April, 1853. The contestant offered to show that in July, 1854, the testatrix was suffering from paralysis. This was excluded as being too remote, and not tending to show her mental condition in 1853. The court say of this ruling:

"To a great extent it must be left to the presiding judge to determine, upon the facts before him, how far evidence of this description may have a tendency to throw light on the fact to be found, namely, the actual condition at the date of the will. * * * We do not perceive any reason to differ from the judge in the limit here applied. After July, 1854, her mental condition must have been greatly changed. Her advanced age, and *the paralysis with which she was at that time seized,* seem to make that period a proper limit for the evidence offered."

It will be seen that this was not a case of progressive

decay, but that the intervening fact, namely, the attack of paralysis, was deemed of controlling effect.

We quote from *Rusling v. Rusling* all that is said by the court on that subject:

"More than two years after this will was signed, the contestant's son was invited by his father to visit him, and during the visit the testator expressed dissatisfaction with his will, and a desire to change it. An altercation then arose among the sons in their father's presence, and, after an interview apart with the two favored sons, the testator said he could not have this trouble, and the will must remain as it was. Aside from the denial, on the part of the proponents, that such an occurrence took place, we think that it is not to be inferred, from this instance of acquiescence by the testator, that his will, made so long before, was the offspring of these sons' influence. The evidence makes it quite plain that, at this later date, senile decay had made considerable inroads upon the testator's mind, and its operations then are not reliable *indicia* of what they might have been when the will was executed."

The court in that case is weighing the evidence,—something we do not, under our practice, possess the power to do. The implication from the whole case is not that this testimony was incompetent, but that it was insufficient to satisfy the court. An examination of the case shows that the first question determined is the power of the court to go into the evidence, and, after determining this, the court proceeds to weigh the evidence, and announces a conclusion on the facts.

The case of *Herster v. Herster* was also determined upon its facts, the court deeming the evidence sufficient, and approving a rule for the guidance of the court in such cases, stated as follows:

"If the testimony is such that after a fair and impartial trial, resulting in a verdict against the proponents of the alleged will, the trial judge, after a careful review of all the testimony, would feel constrained to set aside the verdict as contrary to the manifest weight of the evidence,

it cannot be said that a dispute, within the meaning of the act, has arisen."

The case cannot be deemed authority in this State, from the fact that this Court exercises no such control over verdicts of juries as it is manifest from this opinion that the supreme court of Pennsylvania assumes under their practice. But, upon the subject of the effect of senile decay as affecting the admissibility of testimony, some language of the court is pertinent, and it does not tend to support the contention of proponent here. We quote:

"The limitations which govern the admission of this quality of evidence must depend largely on the character of the unsoundness attempted to be proved. There are types of mental unsoundness which appear suddenly, and may be of short duration, and in such cases the proof, to be of any avail, must come near to the precise time when the act was performed; but the decadence of old age, and many forms of mental derangement and imbecility, are of slow advancement, and proof of their distinct development at any given period will afford pretty clear ground to infer their existence for a long period, either before or after, with a considerable degree of certainty."

Complaint is made of an instruction of the circuit judge to the effect that if the will was obtained by fraud in the first instance it was then void, and that it continued to be void, and that no subsequent ratification would be good for anything without a formal re-execution or republication of the document. We think there was no error in this instruction. Evidence of the statements of the testator acknowledging the will were competent as bearing upon the question of whether the will was in fact executed freely at the time it was made, and was admitted by the circuit judge for this purpose; but, if invalid at the time of its execution, nothing short of a republication would make it valid. This question was directly ruled in *Chaddick v. Haley*, 81 Tex. 617 (17 S. W. Rep. 233). See, also, *Lamb v. Girtman*, 26 Ga. 625.

95 MICH.—23.

The claim of proponent that the charge upon the subject of mental delusion was such as to leave it open to the jury to infer that a mere mistake of fact might amount to delusion is based upon that portion of the charge of the court in which it was said:

" If you shall find· as matter of fact that, at the time the will in question was executed, the testator was laboring under an insane delusion or mania, from whatever source he may have derived it, that this story was true; that he came to believe it was true, and acted upon that belief; and that it was the cause of his making the unequal disposition of his property evidenced by the terms of the will, as between his wife and daughter; when, in fact, the whole story was false, and had no reason or probability for its foundation,—then · I charge you that that was such a mental delusion or mental derangement as would avoid the will."

We think, in view of what was further said in the charge upon the subject of insane delusion, that this instruction could not have misled the jury. The court further charged the jury: ·

" Monomania is insanity upon a single subject. It is an insane delusion which renders the person afflicted incapable of reasoning on that particular subject; he assumes to believe that to be true which has no foundation or reason in fact on which to found his belief."

Again:

"A person persistently believing supposed facts which have no real existence, against all evidence and probability, and conducting himself upon an assumption of their existence, is, so far as such facts are concerned, under an insane delusion."

We think these instructions correctly embodied the law upon the subject, and were well calculated to correct any misapprehension which might arise upon the instruction first quoted.

We are convinced, by a careful examination of the whole

case, that there was no material error committed to the prejudice of the proponent, and that there was ample testimony to justify the verdict of the jury.

The judgment will be affirmed.

The other Justices concurred.