## NOBAN *v.* SHOUP.

1. COMPETENCY—DEEDS—FRAUD—UNDUE INFLUENCE—EQUITY.
   It being made to appear that the grantor of property was old, infirm, and subject to the judgment or will of the grantee, his son, that the consideration was wholly inadequate, and a life estate reserved by the instrument was of little or no value, and that by it decedent excluded from her equal share in his estate an only daughter, the court properly decreed that the deed of conveyance was invalid.

2. SAME—PRESUMPTIONS.
   The presumption arising from such transaction is that the bargain was unjust, imposing on the grantee the burden of showing affirmatively that no advantage was taken and the arrangement was suitable and expedient, conducive to the interest of the grantor.

3. SAME—EVIDENCE—DECLARATIONS.
   Where mental incapacity and undue influence were charged, declarations of decedent that the grantee had agreed to execute a contract to support the grantor were competent to show his mental condition at the time he executed the conveyance.

Appeal from Barry; Smith, J.  Submitted April 11, 1912.  (Docket No. 16.)  Decided July 11, 1912.

Bill by Matilda Noban against Dell Shoup for the cancellation of a deed.  From a· decree for complainant, defendant appeals.  Affirmed.

*Colgrove & Potter*, for complainant.

*Thomas Sullivan* and *Arthur E. Kidder*, for defendant.

Complainant and defendant are both children of Jeremiah Shoup, who died October 14, 1910.  They are his sole heirs.  On July 29, 1910, he deeded to the defendant his farm of 26 acres for a nominal consideration of $1.  This farm constituted all the real estate he owned, and was worth about $1,200.  As a further consideration defendant was to pay to complainant upon the death of the father the sum of $200.  The father reserved a life estate in the land.  The bill is filed to set aside this deed upon the ground that at the date of its execution Jeremiah Shoup was mentally incompetent to execute it, and that the same was procured by fraud and undue influence. The learned circuit judge before whom the case was tried filed a written opinion in which he says:

" I am of opinion from the proof that the deed in question was either obtained by misrepresentation, deception, and undue influence, or, if not that, that Jerry Shoup was not mentally competent to understand the nature of the act he did.  *  *  *  I am without doubt that this deed ought not to stand, and that complainant is entitled to the relief she seeks by her bill."

A decree was entered in accordance with this opinion, from which defendant appeals. ·

BROOKE, J. *(after stating the facts)*.  It would serve no good purpose to set out the testimony *pro* and *con* contained in this rather voluminous record.  Many witnesses were sworn, and, while some were confident that at the

time the deed was executed Jeremiah Shoup was not possessed of sufficient mental capacity to understand and appreciate the character of his act, others were equally certain that at the time his mind was unaffected.

After listening to all the testimony, the learned trial judge himself seems to have been somewhat in doubt as to how far advancing years and bodily ills had affected the mental capacity of the deceased. Certain facts, however, appear to be undisputed. ˊ He was about 75 years old. His habits were not of the best, and he was suffering from the inroads of disease. He lived only about two months after executing the deed in question. While upon the testimony in this record it would be difficult to say that Shoup was mentally incompetent at the time he executed the deed, there is, we think, little doubt that his mental condition was far from normal. In *Jacox* v. *Jacox*, 40 Mich. 473 (29 Am. Rep. 547), this court said:

" The condition of unsoundness thus distinguished by common observers is recognized as adequate to justify equitable investigation. It is not required that it should come from medical experts that the person was insane, or from those not experts that in their view he was crazy.

" In case it appears from the facts that there was mental disorder, but not of a high degree or far advanced, it then becomes material to inquire into the nature of the transaction and the influences leading to it. And if the circumstances disclose that the person under the infirmity, whether through choice, accident, or otherwise, was as matter of fact for the time being in the place of ward of the other party, or was by his own consent, however brought about, in a state of submission to the judgment or opinion of the other, a presumption will arise adverse to the justice and equity of the bargain, and the bargainee will be required to show that no advantage was taken, and that in itself the arrangement was not only suitable, fair, and conscientious, but one expedient under the circumstances and conducive to the interests of the other."

This record discloses no reason why the father should have deeded to the defendant all the estate he had in the world (with the exception of a very small amount of per-

171 MICH.—13.

sonal property), to the practical exclusion of his only other child, the complainant. The value of the life estate reserved, regarded as a means of support for the old man in his last days, was practically nothing. The record is replete with testimony tending to show that Jeremiah Shoup regretted his act almost immediately after he made the deed. It seems to us immaterial whether he was induced to make the deed because mentally incompetent to understand its import, or for the reason, as he claimed, that defendant had agreed to give him an agreement to maintain him during the balance of his life. Neither view would help the position of the defendant. The situation of the father, his extreme age, and his condition, both mental and physical, were such as to impose upon the son the obligation to guard most carefully that father's interests, and to abstain from driving any bargain of advantage to himself with him.

Wherever a contract is entered into with an aged and infirm person to be enforced after death, to the disinheriting of lawful heirs, such contract should be regarded with grave suspicion and close scrutiny, and should be permitted to stand only when established by the strongest evidence. *Shakespeare* v. *Markham,* 72 N. Y. 400.

It is contended by appellant that testimony of declarations made by Jeremiah Shoup to the effect that defendant had agreed to give him a contract providing for his support was improperly admitted—citing *Van Fleet* v. *Van Fleet,* 50 Mich. 1 (14 N. W. 671); *Tolbert* v. *Burke,* 89 Mich. 132 (50 N. W. 803); *Coleman* v. *McGowan's Estate,* 149 Mich. 624 (113 N. W. 17); and *Bettinghouse* v. *Bettinghouse,* 156 Mich. 169 (120 N. W. 617).

While it is not necessary to consider this testimony to reach the conclusion that the deed should be set aside, we are of opinion that, where mental incapacity and undue influence are charged, such testimony is admissible as tending to show the mental state of the grantor at the time of the execution of the deed in question. *Haines* v. *Hayden,* 95 Mich. 332 (54 N. W. 911,

35 Am. St. Rep. 566); *Bush* v. *Delano,* 113 Mich. 321 (71 N. W. 628); 3 Wigmore on Evidence, § 1738.

The decree is affirmed.

MOORE, C. J., and STEERE, MCALVAY, and STONE, JJ., concurred with BROOKE, J.

OSTRANDER, J. (*concurring*). I find testimony which satisfies me that the grantor was incompetent to make the disposition of property complained about.

BLAIR and BIRD, JJ., did not sit.