WAGNER *v.* ZANG.

1. DEEDS—UNDUE INFLUENCE—PRESUMPTIONS—PARENT AND CHILD.
   In suit to set aside conveyances whereby somewhat physically
   infirm grantor gave real estate to his daughter and her hus-
   band who spent considerable time caring for him and his
   various interests in property, grantees should not be penalized
   for honest and faithful service rendered by raising a pre-
   sumption of undue influence based solely on the relation neces-
   sarily incident to the service.

2. SAME—UNDUE INFLUENCE—EVIDENCE.
   In suit by administrator of the estate of grantor who had caused
   title to various property interests to become vested in his
   daughter and son-in-law, who had spent considerable time and
   effort in caring for grantor and his wife, to set aside such
   conveyances, claim of undue influence *held*, not sustained
   where record indicates that grantor was somewhat physically in-
   firm for some time before his death but did retain his mental
   faculties until the last and was the dominating force in all
   his transactions.

3. EVIDENCE—MENTAL CAPACITY—FRAUD—UNDUE INFLUENCE—DEC-
   LARATIONS OF GRANTOR.
   Statements of a grantor both before and after the execution
   of a deed are relevant and material when mental capacity,
   fraud, or undue influence are involved.

4. CONSPIRACY—PARENT AND CHILD—EVIDENCE.
   In administrator's suit to retrieve property deceased had given
   his daughter and her husband who had cared for him and
   looked after his affairs for him under his directions, evi-
   dence amply sustained finding of trial court that acts of
   defendants did not constitute a conspiracy to obtain property
   of deceased, who was about 70 years of age at time of death
   and who had been somewhat physically infirm for a while
   before he died.

5. DEEDS—DISTRIBUTION OF PROPERTY—PARENT AND CHILD—COURTS.
   A person has the right to dispose of his property as he sees
   fit even though the distribution among his children may be
   uneven, and courts will not disturb the natural and reasonable
   act of a parent.

Appeal from Hillsdale; Taylor (Mark D.), J. Submitted June 12, 1940. (Docket No. 42, Calendar No. 40,264.) Decided October 24, 1940.

Bill by Fred Wagner, administrator of the estate of Henry Madden, deceased, and others against George S. Zang and others to set aside certain conveyances, to reform certain mortgages, and for an accounting. Bill dismissed. Plaintiffs appeal. Affirmed.

*Kenneth G. Prettie* and *Merton Fitzpatrick,* for plaintiffs.

*Fred C. Culver* and *W. B. Alexander,* for defendants.

SHARPE, J. Henry Madden died March 4, 1934, leaving a will which was filed for probate in Hillsdale county. The will was not admitted to probate and Fred Wagner was appointed administrator of the estate. This is an action by Fred Wagner, as administrator, and others to set aside certain deeds, to reform certain mortgages, and for an accounting.

For many years Henry Madden lived on a farm a short distance from the city of Hillsdale. His wife died in December, 1928. They had four children: Julia Sage, a daughter, lived in Kalamazoo for many years prior to her death in 1927, and she was survived by her husband, Dr. E. D. Sage, and three children, Helen, Edward and William; William H.

Madden, a son, also lived in Kalamazoo for a period of about 15 years prior to the death of his father; Frank Madden, a son, was a teacher for several years in Davenport, Iowa; and Rose Zang, a daughter, who, together with her husband, George, and her two sons, Vincent and Maurice, lived in Hillsdale, Michigan. George Zang was a post office employee for a period of about 35 years.

Rose Zang gave her father and mother much of her time, and after her mother's death, gave her father care until his death. She lived in her father's home for more than two years prior to his death and during this time George Zang and his sons lived in their home in Hillsdale. In 1929, Henry Madden's physical condition was such that it was difficult for him to get up the court house steps in order to transact business; and on October 4, 1929, he gave George Zang a power of attorney to receive money due on mortgages and to assign and discharge mortgages. George Zang discharged such mortgages as he was directed to do by Henry Madden.

On March 20, 1930, Henry Madden paid his son William $4,000 and gave him deeds to two farms, one of 67 acres and one of 40 acres. Henry Madden gave his son Frank over a period of years the sum of $3,000 in cash, a farm of 40 acres, and two mortgages. It also appears that during the time George Zang had the power of attorney, he discharged 16 mortgages and took back five mortgages in the name of himself and wife of the value of approximately $20,000. In addition, certain real estate was conveyed by Henry Madden to defendants with an approximate value of $28,000.

When the cause came on for trial, the trial court dismissed plaintiffs' bill of complaint and found as a fact that Henry Madden during his lifetime amassed quite a fortune, dealing in real estate and

mortgages both real and chattel; that for several years prior to his death he was in failing health and unable to get around to look after his business interests; that he intrusted much of it to his son-in-law George S. Zang; that on October 4, 1929, he gave George S. Zang a power of attorney to conduct business for him; that for several years prior to his death, his daughter Rose Zang lived at his home and cared for him; that the other plaintiffs with the exception of Fred Wagner lived away from Hillsdale and were not such frequent visitors; that prior to his death, Henry Madden deeded many parcels of land to the defendants; that there was no showing made that Henry Madden was mentally incompetent; that there was no undue influence exercised upon Henry Madden; that there was no showing of fraud or duress practiced upon Henry Madden, nor any evidence of a conspiracy to obtain by unlawful means the property of Henry Madden.

It is urged by plaintiffs that George Zang occupied a fiduciary capacity as agent of Henry Madden; and that the scope of his agency could not be extended by verbal instructions. In deciding this question we have in mind that Henry Madden was a man of strong mind; that his physical condition declined during the last few years of his life, but that he retained his mental faculties to the end; and that he died at the age of approximately 70 years. It also appears that the power of attorney was given George Zang because Henry Madden could not climb the court house steps in order to discharge a mortgage; and that whenever a mortgage was discharged, it was under the direction of Henry Madden.

William O. Keas, register of deeds of Hillsdale county, testified as follows:

"Many of these mortgages were discharged by George Zang, as attorney for Henry Madden. I was present on occasions when George Zang discharged mortgages that were put in evidence.

"*Q.* Did he ever bring instructions or papers with him that he showed to you?

"*A.* He was apt to bring most anything.

"*Q.* Just tell the court what was brought in on these occasions by George Zang, when he would request you to discharge these mortgages. Would he have any paper with him?

"*A.* Well he might tear the corner off a newspaper, or a corner off a notebook and merely put the liber and page—

"*Mr. Prettie:* I want to object. If there are any written instructions given by Henry Madden to Zang, those instructions are the best evidence.

"*Q.* These papers were left with you?

"*A.* No.

"*Q.* Were they taken away?

"*A.* I have testified, they were thrown into the wastebasket. They were only the corners of papers, it might be a little piece of paper with a liber and page written on it, or possibly he would come in with it and say, 'I want to discharge a mortgage that so-and-so gave so-and-so, at such-and-such a time;' and we would dig it up.

"*Q.* Do you have any of those papers?

"*A.* No.

"*Q.* In whose handwriting would they be?

"*A.* Invariably in Henry's.

"*Q.* That is Henry Madden?

"*A.* Yes, sir."

It is also apparent that when the Bail, Gittings, Burkmier and Hand mortgages were discharged and new mortgages taken from the same mortgagors to George and Rose Zang, these transactions were made at the direction of Henry Madden. To illustrate, Mr. Gittings testified as follows:

"*Q.* When did you find out first in whose name it was taken?

"*A.* Well, when we gave it, George Zang was taking it, taking the mortgage over.

"*Q.* Who did you talk with about it?

"*A.* I talked with Henry about the changing it over.

"*Q.* What did he say?

"*A.* Well, he said he wanted to give this new mortgage to George and Rose."

In *Walsh* v. *Walsh,* 242 Mich. 685, we said:

"A child, when a beneficiary of a parent, should not be penalized for honest and faithful service of the parent by raising a presumption of undue influence based solely on the relation necessarily incident to the service."

See, also, *In re Luders' Estate,* 238 Mich. 87.

In our opinion the record does not sustain the claim of undue influence. On the contrary, it is convincing that Henry Madden was the dominating force in all of the transactions that George Zang performed by virtue of his power of attorney.

It is urged that declarations or statements made by Henry Madden not in the presence of any party in interest are inadmissible.

In *Mettetal* v. *Hall,* 288 Mich. 200, 213, we said:

"The statements of a grantor both before and after the execution of a deed are relevant and material when mental capacity, fraud, or undue influence are involved.

" 'It is said by the court in *Waterman* v. *Whitney,* 11 N. Y. 157 (62 Am. Dec. 71), that the "mental strength and condition of the testator is directly in issue in every case of alleged undue influence; and the same evidence is admissible in every such case, as in cases where insanity or absolute incompetency is alleged. It is abundantly settled that upon either of these questions the declarations of the testator made at or before the time of the execution

of the will, are competent evidence.'' The question in that case was whether the same rule would permit the proof of subsequent declarations, and it was held it would.' *Beaubien* v. *Cicotte*, 12 Mich. 459, 486.

'' 'Such testimony is admissible as tending to show the mental state of the grantor at the time of the execution of the deed in question.' *Noban* v. *Shoup*, 171 Mich. 191, citing *Haines* v. *Hayden*, 95 Mich. 332 (35 Am. St. Rep. 566); *Bush* v. *Delano*, 113 Mich. 321; 3 Wigmore on Evidence, § 1738.

'' 'Subsequent declarations are admissible for the reason that the condition of mind ascertained at a date subsequent to the execution of the will may be presumed to have existed at a prior time. *Waterman* v. *Whitney*, 11 N. Y. 157 (62 Am. Dec. 71); *Beaubien* v. *Cicotte*, 12 Mich. 459; *Harring* v. *Allen*, 25 Mich. 505.' *Haines* v. *Hayden, supra*, 346.''

It is also urged that there was a concert of action and conspiracy existing between the defendants to deprive Henry Madden of his property. On this question the trial court made the following finding of fact:

''The court having found no undue influence; no mental incapacity; no fraud or duress to exist; there is but little to point towards a conspiracy. There is no evidence to show that the defendants or any of them deliberately conspired to obtain the property in question. Did their acts then, amount to a conspiracy? This court cannot find from the record that they did. It cannot be said that caring for the old man, looking after his affairs for him, taking him places he wished to go, and in general looking after his care and welfare could, by any stretch of the imagination be called a conspiracy.''

We need not prolong discussion, being of the opinion, after careful reading of the record, that the evidence amply sustains the finding of the trial court.

It is elementary that a person has the right to dispose of his property as he sees fit even though the distribution may be uneven. In the case at bar,

Henry Madden gave the larger portion of his property to those who served him best. This he had a right to do. Courts will not disturb the natural and reasonable act of a parent.

The decree of the trial court is affirmed, with costs to defendants.

BUSHNELL, C. J., and BOYLES, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred. CHANDLER, J., did not sit.