110  285
120  436

GROVE v. YOUELL.

1. LANDLORD AND TENANT—EVICTION—WHAT CONSTITUTES.
   A tenant is evicted from a room in a building, so as to constitute a breach of a bond securing the right to its occupancy, where the only mode of access to the room is denied to him by the procurement of the obligor, in consequence of which the occupation is abandoned

2. SAME—DAMAGES.
   The measure of damages for the eviction of a life tenant from the premises demised consists of the rental value of the premises from the date of eviction up to the commencement of the action, and the present worth of the rental value from that time forward during the tenant's life expectancy.

3. APPEAL—INSTRUCTIONS TO JURY—DAMAGES.
   An objection that the charge of the court was not sufficiently specific as to the method of computing damages will be disregarded on appeal, where no requests for instruction upon that subject were presented to the trial judge.

Error to Kent; Adsit, J. Submitted June 10, 1896. Decided July 21, 1896.

*Assumpsit* by Mary E. Grove against Azlena Youell upon a bond. From a judgment for plaintiff, defendant brings error. Affirmed.

*Lombard & Hughes*, for appellant.

*Daniel E. Corbitt* and *Albert Crane*, for appellee.

LONG, C. J. This action is upon a bond given by the defendant to the plaintiff. The bond recites that the defendant, being in debt to the plaintiff, for the purchase price of certain lots in the city of Grand Rapids, in the sum of $4,000, agrees to pay that sum, with interest at the rate of 7 per cent., payable semi-annually, within five years from the date of the bond. The bond further cites:

"It is further agreed that the said Grove may occupy any room in the house that is on said lots, or any room in any house that may be built on said lots to take the place of the one that is now on them, that she may select, during the remainder of her natural life. It is further agreed that the said Youell shall pay the said Grove the further sum of $50 every six months during the remainder of her natural life. Then this obligation shall be void; otherwise to remain in full force and effect."

The breach of the conditions of the bond assigned is that the two half-yearly payments that fell due June 11 and December 11, 1894, were unpaid, together with the interest thereon. The further breach assigned is that, in pursuance of said agreement, the plaintiff selected a room in said house, of which the defendant had notice,—

"And the said plaintiff entered into and took possession of said room, and occupied the same until on, to wit, the 1st day of October, 1893, at which time the said defendant evicted her therefrom; and afterwards, to wit, in the month of October, 1893, the said defendant rented the house that was on said lots to Hiram R. Ellis, who, with his family, entered into and took possession of said house, and still occupies the same; and the said defendant and her tenant aforesaid entered the room so selected as aforesaid by the said plaintiff, and evicted the said plaintiff, and deprived her of the use and benefit thereof, and compelled the said plaintiff to abandon the same."

Upon the trial the plaintiff introduced testimony tending to support the allegations of her declaration. There was no denial on the part of the defendant of the amount due upon the agreement, and the court so directed the jury. The controversy was over the question whether the plaintiff had been evicted by the defendant, or with her knowledge. That fact was asserted by the plaintiff and denied by the defendant.

The court charged the jury upon this question, and upon the question of damages, as follows:

"To constitute an eviction of plaintiff from the room by defendant, an actual, physical expulsion was not necessary. Any act or acts of the defendant which deprived

the plaintiff of the beneficial enjoyment of the room, to which she was entitled under the bond, would amount, in law, to an eviction.   If, by the procurement of the defendant, the plaintiff was excluded from access to such room, with the intention and effect of depriving the plaintiff of enjoyment thereof, and the plaintiff yielded to such exclusion, and abandoned the occupation of such room, such exclusion, in law, would amount to an eviction.   It is not necessary that you should be confined to any one of the several alleged acts testified to on the part of the plaintiff, from which to find whether or not an eviction has been established by the evidence.   You have a right to take into consideration all the facts and circumstances proved in the case, relating to the alleged breach, prior to the commencement of this action.   It is for you to determine the credibility of the witnesses sworn in the case, and to give to the testimony of each such weight as you think it is entitled to.   It was the duty of the defendant to provide the plaintiff with the facilities of ingress and egress to the room in question.   If, as it is claimed by the plaintiff, the tenant of the defendant refused the plaintiff ingress to the room, which fact was communicated to the defendant, and she thereafter refused or neglected to provide plaintiff with facilities for ingress and egress to the room, with intent thereby to deprive plaintiff of the free use of said room, then such alleged facts, if you find them to be true, constituted an eviction by the defendant of the plaintiff from the room in question.   It is for you to say whether it is true, or not, from the evidence in the case.   Of course, if you find it was not true, it would not constitute an eviction, because there would be nothing to base it on, so far as that alleged fact is concerned.

"If you find that the assignment of the breach of the bond by the defendant, in evicting the plaintiff, is true, and that the plaintiff should recover damages therefor, then the plaintiff was not bound to renew the contract broken by the defendant, either by making any subsequent demand for the possession of the room, or by accepting possession of the room of the defendant afterwards, and you will assess the plaintiff's damages for this breach.   The damages sustained by the plaintiff under the breach of the bond assigning an eviction, if any, include damages for two different periods: *First*, damages from the date of the eviction to the commencement

of this suit; and, *second*, damages from the date of the commencement of this suit to the time you determine that the plaintiff will probably live. Under these instructions it will be necessary for you to determine when the eviction occurred. The date of the commencement of this action is shown by the files in the case to have been the 19th day of March, 1895. The measure of damages from the date of eviction to the commencement of this suit will be the rental value of the room during that time,—the fair rental value of it; what it was actually worth. To determine the plaintiff's damages, if any, subsequent to the commencement of this suit, you will find from all the evidence in this case, considering the plaintiff's age, her health, her condition in life, her expectation of life, as shown by the table of mortality based on American experience, and the circumstances under which she is placed, how long she will probably live, and the annual rental value of the room during that time, and then determine the present worth of that rental value for one year, for two years, and so on, up to and including the expectation of life which you find, and add these sums together. The present worth of the annual rental value of the room may be obtained by dividing the annual rental value by one dollar plus the interest on one dollar at the rate of 6 per cent. per annum for one year, and for two years, and so on, up to and including the expectation of life which you find from all the evidence in the case. The present worth of the annual rental value of the room subsequent to the commencement of this suit, added to the damages found before the commencement of this suit, will be the amount of damages you should assess for the breach of the bond averring the eviction. If you do not find for the plaintiff on the breach assigning an eviction, then you will find in your verdict that the breach so assigned is not true, and that the plaintiff should not recover damages therefor."

The court also instructed the jury as to what the form of the verdict might be upon either branch of the case. The jury found there was due upon the money part of the bond the sum of $107.50, and, as damages for the eviction of the plaintiff from her room in the house, the sum of $500.

The first assignment of error relates to the charge of

the court; and the defendant asserts that the cause was tried upon the theory that, if plaintiff was evicted from the room selected by her by defendant's tenant, Hiram R. Ellis, or by his wife, defendant would be liable for damages, regardless of defendant's knowledge, consent, or authorization of such eviction; and it'is insisted that the court was in error in this charge. The case was not submitted to the jury upon that theory. The portion of the charge relating thereto has been set out above. The evidence tended to show that there was an eviction by the procurement of the defendant. We need not set forth the evidence here. We think there was sufficient evidence upon which to base the charge of the court, as given.

Defendant's requests from 1 to 6, inclusive, were properly overruled by the court. The seventh request was upon the theory that the lease which defendant gave to Ellis reserved to the plaintiff the room in question, with right of ingress and egress, and that it then and there became the duty of Ellis to recognize such right of occupancy and of ingress and egress to and from said room, and that the conduct of Mr. Ellis or his wife could not be considered, unless the jury were satisfied, by a preponderance of evidence in the case, that such action and conduct were at the request and by the direction of the defendant. It is evident that the court below did not regard the lease as reserving the rights to which the plaintiff was entitled, but that Ellis and his wife, under the lease, and with the knowledge of the defendant, ejected the plaintiff from the premises. The lease from defendant to Mr. Ellis was for the period of three years, at the sum of $16 per month. So far as any rights of Mrs. Grove are recognized in the lease, they are stated as follows:

"Yielding and paying therefor * * * during the occupancy by Mrs. Dr. Grove of a portion of said dwelling house; and, when Mrs. Grove vacates said dwelling

house, the sum of $18 per month is to be paid, in lieu of $16, as before stated."

The lease then provides that, upon the keeping of the covenants and agreements by Ellis, he is to have and hold, possess and enjoy, the premises, with the appurtenances, during the said term, without let or hindrance from the lessor, or any person claiming by or under her.

Plaintiff testified that, after the premises were rented to Ellis, defendant tried to induce her to surrender the room, and accept a room in the house where defendant was then living. This she refused to do. In a conversation afterwards, defendant said to plaintiff:

" I have rented the house. * * * I can tell you in short order what I will do about the room: I never will pay you a dollar for the room, and I will give you good notice it never shall be worth a dollar to you. When you leave it, you will never want to go into it again. I will fill the house with the dirtiest things I can find in Grand Rapids. I can do it if I have a mind to."

Plaintiff responded: "I suppose you can. It is your own house,"—when defendant replied:

" Well, when any one tries to be mean with me, I give them good notice, I make them sick. They don't get the start of me."

Defendant herself testified that she told Mrs. Ellis that she understood the plaintiff had moved all her things out that were of any value, and presumed the balance might be put into the attic, and she might use the room. The plaintiff made application to Mrs. Ellis to have her room, when she was told she could not go to her room, and that Mr. Ellis told her not to let Mrs. Grove go to the room. Judge Grove thereupon went to see the defendant in reference to this room, and asked if she would be allowed to occupy it. Defendant replied: " Why, yes; she can have access to the room, if she can get to it without going through the house." He then asked if there was an out-

side stairway, without going through the house, and defendant said, "No."

We think, under the terms of the lease, and this testimony, that the charge of the court was correct as to what constituted an eviction. As was said in *Royce* v. *Guggenheim,* 106 Mass. 201:

"Any act of a permanent character done by the landlord, or by his procurement, with the intention and effect of depriving the tenant of the enjoyment of the premises demised, or of a part thereof, to which he yields, and abandons possession, may be treated as an eviction."

In *Pridgeon* v. *Excelsior Boat Club,* 66 Mich. 326, it was said by this court:

"A party should be held evicted when the act of the landlord is of such a character as to deprive the tenant, or has the effect of depriving him, of the beneficial use and enjoyment of the whole or any part of the demised property, to the extent he is thus deprived." See, also, *Hoeveler* v. *Fleming,* 91 Pa. St. 322.

It is also contended that the court was in error in leaving to the jury the amount of damages, without any legal basis of computation. It will be noticed that the court, by its charge, fixed the date at which the computation should be commenced as the time when the suit was commenced, and the rental value of the room from that time forward, including the expectation of life of the plaintiff, based upon the mortality tables. This was the correct measure of damages. *Balch* v. *Railroad Co.,* 67 Mich. 394; *Kinney* v. *Folkerts,* 84 Mich. 616. As was said in *Kinney* v. *Folkerts, supra,* "If the defendants desired fuller instructions, it was their duty to have asked them."

The judgment must be affirmed.

The other Justices concurred.