ADAMS *v.* WERNER.

LANDLORD AND TENANT--REPAIRS - EVICTION.

> Where, by act of an employé of the landlord, leased premises are rendered unfit for the purpose for which they were hired, and such condition is aggravated by the landlord's failure properly to make repairs which he assumes to make, the tenant may, after his refusal to restore the premises to a condition adapted to the tenant's needs, treat such conduct as an eviction, and vacate the premises; and this although the tenant himself covenanted to repair.

· Error to Marquette; Stone, J. Submitted April 20, 1899. Decided June 19, 1899.

*Assumpsit* by Sidney Adams against Gustavus A. Werner for rent. From a judgment for defendant, plaintiff brings error. Affirmed.

*Button & Culver*, for appellant.

*Hill & Smith*, for appellee.

MOORE, J. This case was tried before the judge without a jury. The judge made the following findings:

"1. On the 8th day of July, 1895, the plaintiff, being the owner of the 'Adams Block,' so called, on the east side of Front street, in the city of Marquette, in which block was located a gallery known as 'Childs' Art Gallery,' rented the said art gallery to the defendant for the term ending April 30, 1897, to be occupied for an art gallery, for the rental of $10 a month until May 1, 1896, and $20 a month, payable on the last day of each month, for the remaining 12 months. Said lease was in writing, and contained, among other provisions, the following:

"'And also that said party of the second part [the defendant] will, at his own expense, during the continuance of this lease, keep the said premises and every part thereof in as good repair, and at

the expiration of the term yield and deliver up the same in like condition, as when taken, reasonable use and wear thereof and damage by the elements excepted.'

"Then follows the usual clause for peaceable and quiet enjoyment on paying the installments of rent aforesaid. The lease was received in evidence upon the trial, and is made a part of this finding.

"2. The defendant entered into possession of the said art gallery, which consisted of a number of rooms, including an operating room, which had a skylight of glass about 13 by 18 feet in size, such as is in general use in the photograph and like business. During the continuance of such lease, and in the month of August, 1896, the defendant applied to the plaintiff for a reduction of the rent for the remainder of the term, and complained of the dullness of business. After some discussion of the subject, the plaintiff agreed to reduce the rent to $15 per month for the remainder of the term, upon condition that said defendant was to remain a tenant for another year, to wit, from May 1, 1897, to May 1, 1898, at the old rental of $20 per month. These terms were agreed upon, and such arrangement was made by the parties.

"3. The skylight referred to contained large lights of glass, 20 by 30 inches, and in the month of March, 1897, during the term of said written lease, some men in the employ of plaintiff, while engaged in throwing snow from a roof adjoining said skylight, accidentally broke two or three lights of glass in said skylight, the snow falling thereon. An attempt was made by the plaintiff's agent to repair the injury, and two more lights were broken in the process, making five lights broken in all. No putty was used in the attempted repairs, the frame and woodwork being wet and the weather cold, but nails were driven in, fastening the glass. The next day one of the lights of glass broke across where the nail had been driven, and the defendant called the attention of the plaintiff's agent to the broken glass, and complained of it. The said damage done to the skylight by the falling snow was not properly repaired, and the skylight leaked badly whenever it rained, or whenever the falling snow melted, during all the subsequent occupancy by defendant, rendering it necessary to use boxes and pans to catch the water, and rendering it unpleasant and unsuitable, if not impossible, to do a profitable business in the operating room at such times, and

materially affecting the business of the defendant, the falling water injuring the carpet, curtains, and furniture of defendant, of which condition the defendant complained to the agent of the plaintiff.

"4. At the close of the term of the written lease, to wit, on May 1, 1897, the defendant was in arrears for rent for February, March, and April, 1897. The defendant was called upon for rent by the agent of the plaintiff at the close of each month, and he refused to pay the rent until the skylight was repaired, and so stated to such agent. The defendant continued to occupy the premises under the verbal arrangement and agreement of August, 1896. The plaintiff's agent applied to the defendant monthly for the payment of rent. The defendant on these occasions complained of the leaking condition of the skylight, and paid no rent (except $15 in June, which was applied in payment of the February rent), and said he wanted to see the plaintiff, and he also complained that the rent was too high. This condition of things continued until August 2, 1897, when the plaintiff wrote a letter to the defendant, of which the following is a copy:

" 'Marquette, Mich., August 2, 1897.
" 'G. A. Werner, Esq.,
          " 'City.

" ' *Dear Sir:* September last I agreed with you that in consideration of your agreeing to pay $20 per month for rent of gallery from May 1, '97, to April 30, '98, and also agreeing to pay this rent promptly on the 1st of every month, that I would take off $5 a month from your lease until May 1, '97. Trusting your honor to do as you agreed, I told my clerks to collect only $15 a month until May 1, '97, and $20 after that. On this agreement you are now $90 behind with your rent, that was to have been paid promptly. Will you please give us check or pay this back rent at once ?
          " ' Yours truly,
                    " 'S. Adams.'

"Soon after receiving this letter, the defendant saw the plaintiff, and complained that the rent was too high, denied that he had ever agreed to pay $20 a month after May 1, 1897, and complained of the leaky condition of the skylight, and refused to pay any rent until the skylight was repaired. The plaintiff refused to repair the skylight, claiming that it was the duty of the defendant to do so under the terms of the lease. The defendant then said to the plaintiff that he would move out, and somewhere from

the 10th to the 16th day of August, 1897, he commenced to make preparations to move; and arranged to repair his own building for the business. He continued, however, to occupy the plaintiff's premises until about September 15, 1897. Although the plaintiff had refused to repair the skylight, he sent a man into the gallery soon after the defendant had determined to move out, and about August 21st, with instructions to repair the skylight. The defendant objected to being disturbed, and said he was going to move out, and told the man to wait until he had moved. The same man came back about a week later, and was again sent away by defendant. The defendant at this time was engaged in moving out, having already removed the negatives and some stock. The plaintiff finally sent men to repair the skylight. They commenced the work about September 7, 1897, and completed it about September 17th. They put in 15 new lights of glass, and three men worked three days or more. During the time they were at work the defendant completed moving out, and vacated the premises, to the knowledge of the plaintiff.

"5. At the time of the commencement of this suit, rent remained unpaid for the months of March and April, 1897, at the rate of $15 per month, and for May, June, July, August, and September, 1897, at the rate of $20 per month,—making, in all, $130. The defendant was entitled to a credit for work of $2, leaving a balance due the plaintiff of $128, to the close of the month of September, 1897, for rent. Before the trial of the case, the defendant tendered to the plaintiff, and paid into court, the sum of $160.25 in full for damages and costs to that time. I find that the amount so tendered was sufficient to pay the plaintiff's demand and the costs of said suit up to the time of such tender.

"From the foregoing facts I find, as matter and conclusion of law, that the said premises, by reason of the leaky condition of said skylight, were in an untenantable condition, and were unfit and unsuitable for the carrying on of said business, and that it was the duty of the plaintiff to repair the same; that the plaintiff's servants, while in his employ, having injured the said skylight as aforesaid, it became and was the duty of the plaintiff to properly repair the same; and that his refusal and neglect to repair said skylight, after complaint and notice by the defendant, justified the defendant in terminating the lease and vacating the premises; and that the conduct of the plaintiff in the premises amounted to an eviction in the law."

When the original lease was made, as well as when it was modified by the verbal arrangement, the building was adapted to the needs of the tenant, who had hired it for a particular business. This was understood by the landlord. Through the act of the landlord, injuries were done to the building which rendered it practically useless for the purpose for which it was hired. The attention of his agent was called to the condition of the building. He undertook to make repairs. His efforts resulted in making a bad matter worse. Through the act of the landlord, represented by his employés and agent, the tenant was deprived of the beneficial use of the building. The conclusion of the circuit judge is justified by the following cases: *Young* v. *Collett*, 63 Mich. 331; *Pridgeon* v. *Boat Club*, 66 Mich. 326; *Bostwick* v. *Losey*, 67 Mich. 558; *Leonard* v. *Armstrong*, 73 Mich. 577; *Pierce* v. *Joldersma*, 91 Mich. 463; *Grove* v. *Youell*, 110 Mich. 285; *Fisher* v. *Nergararian*, 112 Mich. 327.

Judgment is affirmed.

The other Justices concurred.