SMITH *v.* DETROIT UNITED RAILWAY.

1. RAILROADS—PERSONAL INJURIES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.

In an action on the case for personal injuries, it appeared that plaintiff went from her home on a division of defendant's electric railway to a village on another division of the road; that near the junction of the two, on the division to which she transferred, defendant's road crossed another railway which crossing was protected by a derailer; that plaintiff was unfamiliar with electric cars and had never been on the last-named division; that on her return in the evening, it being dark and rainy, when the car approached the said junction, the conductor announced the station and immediately

left the car; that plaintiff started to alight, as others were doing, and the car suddenly started, throwing her to the ground; that the car, in fact, was stopped for the purpose of setting the derailer. *Held*, that the questions of defendant's negligence and plaintiff's contributory negligence were for the jury.

2. EVIDENCE—RES GESTÆ.

The testimony of an eyewitness as to what occurred, and what other passengers did at the time of the accident, was material as part of the res gestæ, and on the question of plaintiff's contributory negligence.

3. APPEAL AND ERROR—EVIDENCE—INSTRUCTIONS.

Whether the admission of evidence was error will not be considered where the charge given took the consideration of such testimony from the jury.

4. EVIDENCE—OPINION EVIDENCE—EXPERT WITNESSES.

Permitting doctors, called as expert witnesses, to state whether a cause, which it was alleged existed, would, in their opinion, as medical men, be sufficient to produce a condition which it was claimed resulted from the accident, was not error on the ground that the questions were deficient in not stating the circumstances under which the accident occurred, since the questions asked did not call for opinions on the whole case.

5. SAME—RES GESTÆ.

Evidence that plaintiff's husband, who immediately preceded her in alighting from the car, called out, "Hang on," as the car started up, just as she was alighting from the lowest step, was admissible as part of the res gestæ.

6. TRIAL—INSTRUCTIONS—DEFINITIONS.

Definitions of negligence and contributory negligence should be considered in connection with the charge as a whole and the requests of both parties which were given.

Error to Oakland; Smith, J. Submitted July 13, 1908. (Docket No. 88.) Decided February 2, 1909.

Case by Jennie I. Smith against the Detroit United Railway for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Brennan, Donnelly & Van De Mark* and *James H. Lynch*, for appellant.

*Aaron Perry* and *George W. Caswell*, for appellee.

McALVAY, J.    Plaintiff recovered for personal injuries claimed to have been caused by the negligence of defendant's agents and servants in operating one of its cars at or near the village of Royal Oak in Oakland county. Plaintiff, her husband, and three small children were passengers upon a car upon defendant's road, being conveyed, for a distance, over both the Detroit & Pontiac division and the Flint division.    On the morning of November 20, 1904, these parties left their home in the village of Birmingham to visit friends, who lived about three miles northeast of Rochester.    They went to Royal Oak on the Detroit & Pontiac division, and transferred to the Flint division, and proceeded on that division to their destination.    In coming over defendant's road on the Flint division, near Royal Oak waiting room, and before the transfer is made to the Detroit & Pontiac division, defendant's road crosses the Detroit, Grand Haven & Milwaukee railway track.    At this crossing there is a derailer on each side of the above-named railroad which cannot be crossed until the derailer is set for crossing. In going on the journey in the morning the place of transfer was reached, and transfer was made, before coming to the railroad crossing.    Defendant's cars always stopped at this crossing going both ways, and the derailer was set before going over.    This appliance is for the purpose of safety, and any attempt to cross with defendant's cars without stopping and setting it would result in throwing the car from the track.    Plaintiff was not accustomed to electric cars, and had never ridden on the Flint division before this journey.    The evening was dark and rainy. On the return trip plaintiff, her husband, and the three children were seated on the last, or next to the last, seat in the rear end of the car.    As the car approached the railroad crossing, so both the plaintiff and her husband

testify, the conductor opened the door and called out "Royal Oak," and the car slowed up. When the car stopped, these parties all proceeded to get off; the husband, with two children, ahead, followed by the plaintiff, who carried the baby in her arms. There is evidence to show that another woman followed directly behind plaintiff. The little girl and the husband, who carried the boy, alighted in safety. The plaintiff had reached the bottom step, when her husband called, "Hang on!" The car started suddenly and she was thrown to the ground with the child she held, and received injury. The car was crowded. People were standing inside and on the back platform. The negligence charged is that plaintiff, after the conductor had called out "Royal Oak," using due care, was alighting from the car, which had stopped, when defendant's servants suddenly caused the car to start with a jerk, throwing her down and injuring her. The defense to the action was that plaintiff was guilty of contributory negligence, in that this was not the place for stopping cars to allow passengers to alight, as might easily have been seen by plaintiff had she used diligence; that the stop was necessary to conform with the regulations of the road, and for purposes of preventing accident; that plaintiff was also negligent in attempting to alight after the car had started.

Can we say, under the circumstances of this case, that plaintiff, as a matter of law, was guilty of contributory negligence in attempting to leave the car at this place (*a*) because it was not the regular place for stopping to allow passengers to alight; (*b*) because the stop was necessary to conform with the regulations of the road and to prevent accident? To the first contention we answer that there are several reasons why we cannot. The night was dark and rainy, and there is evidence tending to show that the situation could not be seen by plaintiff. This eliminates defendant's chief argument under this contention. The mere fact that a passenger alights when a car stops at other than a regular stopping place is not therefore negli-

gence per se.   Other factors besides inability to see might, as in the case at bar, operate to relieve the passenger at such a place from negligence in alighting.   It is undisputed that the conductor, shortly before the car stopped, called out "Royal Oak."   It is in dispute just where the car was when this call was made.   It was the last call made before the car stopped, and immediately after calling out he passed rapidly out of the car.   Plaintiff, believing that this was Royal Oak where she was to change cars, arose, and, seeing others in the car at the same time doing the same thing, proceeded to leave the car.   The same reasoning applies to and answers the other contention that contributory negligence may be charged to plaintiff because this stop was necessary, and to prevent possible accident at the railroad crossing.   The question is, What might this announcement and the stopping of the car reasonably signify and indicate to her under all the circumstances ?   We must bear in mind that in this call there was nothing to indicate that this was not a regular stopping place, nor was any warning given before the car was started.   Our opinion is that it was not error to submit the question of the negligence of defendant to the jury. *Wolf* v. *Railway*, 131 Wis. 335, and cases cited; *Taber* v. *Railroad Co.*, 71 N. Y. 489.   Our own decisions, and other authorities, hold that where, after the station is announced, a train overruns a station, or stops before reaching it, allowing passengers to alight at a dangerous place, or the train is moved without warning and injury follows, the question of negligence of the company should go to the jury.   *Mensing* v. *Railroad Co.*, 117 Mich. 606; *Cartwright* v. *Railway Co.*, 52 Mich. 606; *Bridges* v. *Railway Co.*, L. R. 7 H. L. 213; *Van Horn* v. *Railroad Co.*, 38 N. J. Law, 133.   The case at bar is not within the case of *Minock* v. *Railway Co.*, 97 Mich. 425, cited and relied upon by defendant, where on leaving one station the announcement was made, "The next station is Holly," and the train stopped at a railroad crossing without further announcement, when

the plaintiff proceeded to get off, and was injured. It appears in that case, by established custom, that this announcement was always made soon after leaving a station, and afterwards the next station was called when reached. Plaintiff was uncertain as to this, but the court says:

"The evidence shows that 'Holly' was called when reached, and there is really no testimony that others were not, and the jury should not be permitted to assume it."

The questions of the negligence of defendant and the contributory negligence of plaintiff were both questions upon which the jury should pass, and both questions were submitted to the jury.

There remains to be determined in the case whether in the trial the court committed any reversible error in passing upon the questions raised upon receiving or rejecting evidence, or in charging the jury upon questions of law. The errors discussed upon these propositions will now be considered in the order above indicated. Of the errors assigned, the first discussed relates to the testimony of the witness Terwilliger, who was a passenger upon this car, concerning what his wife, who accompanied him, did at the time the car stopped. Plaintiff had already testified that other passengers were going out of the car at the time she went out, and that one woman, also going out, was immediately behind her. The testimony of an eyewitness as to what occurred, and what other passengers did, at the time of the accident was material as part of the res gestæ, and on the question of plaintiff's contributory negligence. It is within the reasoning of the rule laid down in *Holman* v. *Railway Co.*, 114 Mich. 208, and 11 Enc. of Evidence, p. 391 et seq., and notes.

Error is assigned upon the admission of testimony of the same witness on redirect examination relative to the fact that passengers frequently left the cars at this place. This was first brought out by defendant on cross-examination of this witness, and defendant examined its witnesses upon the same subject. The court, at the request

of defendant, charged the jury as to the passengers desiring to transfer, who were familiar with the premises leaving the car at this point, as follows:

" The plaintiff in this case claims that this was the first time that she had ridden over this road, and that she had little or no knowledge of the surroundings of the road or the manner in which it was operated. Under those circumstances it is not material in this case whether or not passengers, desiring to transfer to the Birmingham car, and who were familiar with the premises, sometimes left the car when it stopped for the derailer on the easterly side of the Detroit, Grand Haven & Milwaukee tracks, since the plaintiff had no knowledge of that fact, and for the further reason that the usual and customary place for passengers to transfer from the Flint division of the cars for Birmingham was at a point on Washington avenue."

Defendant moved to strike out all of the testimony upon this subject. The exception was taken to the denial of this motion but the above request, given later, took the consideration of the testimony from the jury. As to the materiality of the testimony we need not determine. Defendant cannot complain that the action of the court constituted error.

Two physicians were examined as expert witnesses for plaintiff. The first of these witnesses did not attend plaintiff at the time of her injury, but made an examination, in connection with the other physician, March 27, 1905. The record does not show that he was in court and heard the evidence in the case. On direct examination he testified as to her condition at that time. On redirect he was asked:

"*Q.* State whether the conditions which you found at the time you examined this patient, on the 27th day of March, 1905, were such as would naturally result from a strain or concussion resulting from a fall from a street car, of the patient?

"*A.* It could be."

The other physician who attended plaintiff at the time of her injury was asked:

"*Q.* State whether or not the conditions which you saw at that time were such as would naturally result from a fall from a street car, done in such a way as to sprain or strain the back in the vicinity—well I will say back—and the concussion resulting in case the patient should fall upon the back?

"*A.* Yes, sir."

The objection of defendant to these questions is that they were deficient in not stating the circumstances under which the injury was inflicted. The questions asked did not call for the opinion of these witnesses on the whole case. This court has several times decided that questions similar to those asked in this case are proper. In *Lacas* v. *Railway Co.*, 92 Mich. 417, the court said, in passing upon a question similar to the questions in the case at bar:

"The testimony given in answer to the above-quoted question was proper as showing the character of the cause which might have produced the injury. The question did not, as was the case of *Jones* v. *Village of Portland*, 88 Mich. 598 (16 L. R. A. 437), call for the opinion of the witness on the whole case. The extent to which the ruling went was to permit a doctor to state whether a cause, which it was alleged existed, would, in his opinion as a medical man, be sufficient to produce a condition which it was claimed resulted from this cause. The question is ruled by *Fay* v. *Swan*, 44 Mich. 544."

The case at bar is not distinguishable on this point from *Lacas* v. *Railway Co.*, supra, which was followed in *Bush* v. *Railway Co.*, 113 Mich. 513. See, also, *Boehm* v. *City of Detroit*, 141 Mich. 277. It was not error to allow these questions to be answered.

Error is also assigned in permitting plaintiff's husband to state what he said to her at the time she was stepping off the car.

"I says, 'Hang on!' I said that to her when the car started, and just as the car started she fell."

This occurred after the husband had alighted from the car with one child, and while plaintiff was in the act of

stepping from the lowest step of the car. As the car started, he cried out to her "Hang on!" We think it admissible as part of the res gestæ. It was an instinctive exclamation, made immediately as the car started, called out by the apprehended danger of an accident to his wife, by reason of the starting of the car. 24 Am. & Eng. Enc. Law (2d Ed.), pp. 685, 686, and authorities cited.

Defendant assigns error upon the refusal of the court to give the ninth and a part of the twelfth requests to charge. The ninth request reads:

" If the jury find that the conductor did call out 'Royal Oak,' that did not, in itself, notify or inform plaintiff that that particular point was the point at which transfers should be made to the other line, and that plaintiff had no reason from anything the conductor said to leave the car, and the fact that her husband did so, as I have before said, furnishes no excuse for her conduct. She could have made inquiries of the conductor as to what to do, and, failing to have made inquiries in that regard, she acted at her own peril."

This request was properly refused. The conductor testified that he called out "Royal Oak." This is the announcement plaintiff says she heard. There is no dispute that, soon after he made the announcement plaintiff heard, the car stopped, and she, her husband, and others proceeded to leave the car. The conductor had left the car, and there was no possible opportunity to make inquiry of him. It was not applicable to the facts in the case, which were not disputed, and upon which we have decided that the question of the negligence of defendant was for the jury to determine. The twelfth request was in the alternative. The part not given reads:

"If the jury believe that at the time in question, as claimed by plaintiff, the conductor did not call out, in the hearing of plaintiff, 'Royal Oak,' or 'Royal Oak, passengers transfer for Birmingham and Pontiac,' or words to that effect, then the plaintiff cannot recover. If not given, then the following."

This alternative was given as follows:

"If the jury believe that, just prior to the stopping of the car at the place where plaintiff was injured, the conductor did call out 'Royal Oak,' but that the plaintiff undertook to alight from the car at the point in question, then, in determining whether or not the plaintiff was guilty of contributory negligence in so attempting to alight from the car, the jury should take into consideration the place where the cars stop, the absence of lights at that point, the arrangements for lights at the waiting room, the customary manner in which the cars were operated, and all the other facts and circumstances in the case, and if the jury believe that the actions of the plaintiff at that time were not actions of an ordinarily prudent person under the circumstances, taking into account plaintiff's ignorance of the surroundings, then the plaintiff would be guilty of contributory negligence, and independent of the negligence of the defendant the plaintiff cannot recover."

The defendant designates these as two paragraphs of one request. They are in fact two distinct requests, based upon two different theories. The first was properly refused as not applicable to the facts in the case.

Defendant's fourteenth request was not given. It would be of no benefit to repeat it here. It was also in the form of two requests. The reasons herein given for refusing the requests of defendant which we have discussed dispose of the error assigned for refusing to give defendant's fourteenth request. The requests are similar in character, and the same arguments are relied upon in support of all of them. Both sides submitted requests to charge covering their views of the case. We have discussed all the errors assigned upon them. No errors are assigned upon plaintiff's requests as given, which are in part as follows:

"If you find that the night of the accident was a dark, rainy night, and that for that reason while on the car the plaintiff could not see the situation of the car with reference to the waiting room at Royal Oak, or where it was on the street, and the conductor of the car opened the door and called 'Royal Oak,' and soon thereafter the car stopped still, and the plaintiff then believed

from such announcement that she had reached the proper place to alight, and no warning was given to delay, or not to get off at that place, and she did not know she was near a railway crossing, and two passengers had preceded her in getting off the car there—that is, if you find these things from the evidence—then I charge you that, under such circumstances, she had a right to assume that sufficient time would be given her to get off the car in safety if she acted with reasonable care and diligence.

"And I charge you further in this case, if you find, in undertaking to get off the car at the place where she did undertake to alight, and was just in the act of stepping off, and had reached a point where it would be difficult, as she was situated, to turn back, that the car started at the very instant she was so acting, then I charge you, as a matter of law, that she would not be guilty of negligence herself in continuing her descent from the car."

The court gave the following among other requests of defendant:

"All persons using the defendant's electric car of the Flint division are held chargeable with the knowledge of the manner in which the same is usually operated, even though they may not have had any actual knowledge of the same.    *    *    *

"In determining whether or not defendant was negligent in the manner in which the car was operated, the jury may take into consideration the manner in which the other suburban cars in this section are operated, as far as relates to having no one but the motorman in charge of the car when the conductor proceeds to throw the derailer, and if the defendant used the same precautions which were used on the other roads of like character in this section of the country, then it was not negligent in having the car in control of the motorman alone at such times.

"If the jury believe that the conductor did call out, at the time and place plaintiff claims, the words 'Royal Oak,' and find that the plaintiff did undertake to leave the car at that place, and got upon the step of the car when or after the same had started, and she was thrown to the ground, I charge you that such action upon the part of plaintiff was negligent, and she is deemed to be by law guilty of contributory negligence, and she cannot recover.

"If the jury believe that at the time the plaintiff got

upon the rear platform of the car the car had started, and that as plaintiff attempted to go down upon the lower step, she was so placed in a position of greater danger than she was upon the car platform, then she was guilty of contributory negligence, and she cannot recover."

The theories upon which plaintiff and defendant relied are outlined in the portions of the charge quoted; and, reading the charge as a whole, all the requests defendant was entitled to were given. The court in the main charge defined negligence and contributory negligence. Defendant has assigned error upon these definitions. We give the whole paragraph, in which negligence was defined as follows:

"One definition of the word 'negligence' is this: Negligence consists in a want of that reasonable care which should be exercised by a person of ordinary prudence, under all the existing circumstances, in view of probable injury. Negligence is the failure to observe, for the protection of another's interest, such care, precaution and vigilance as the circumstances justly demand, and a want of which causes injury. Ordinary care as used in these cases has relation to the situation and condition of the parties, and varies according to the exigencies which require vigilance and attention. The question of diligence or negligence in these cases always depends upon the circumstances peculiar to each particular case."

The definition of contributory negligence given was:

"Contributory negligence is where one so acts as to contribute by direct consent to, or participation in, the wrong complained of."

The first sentence of the definition of negligence is the part objected to. Wherein the error lies we are not informed. Judge COOLEY, in his work on Torts (3d Ed.), p. 1324, is authority for the correctness of the second sentence of this definition. *Moomey* v. *Peak*, 57 Mich. 261, is authority for the definition of contributory negligence. These definitions must be taken in connection with what the court said upon the subject of negligence in his charge, and in the requests of both parties which

were given, and, so considering them, we find that the court was not in error.

The charge of the court, to which defendant has raised few objections, fairly submitted the case to the jury.

From a careful examination of the record we find no reversible error.

The judgment is affirmed.

BLAIR, C. J., and GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.