BAMLET REALTY CO. *v.* DOFF.

1. APPEAL AND ERROR—EVIDENCE—TRIAL—CURING ERROR.

   The erroneous admission of testimony on the trial of an action for breach of a contract of leasing may be cured by the charge of the court, withdrawing from the jury the matters covered by the incompetent testimony.

2. LANDLORD AND TENANT—EVICTION—INTERFERENCE WITH USE OF PREMISES.

   Acts of interference on the part of the landlord need not amount to actual physical expulsion, if the interference goes to the extent of depriving the tenant of the beneficial enjoyment of the premises; an eviction is effected when the act of the landlord is of such character as to deprive the tenant of the beneficial enjoyment of the whole or any part of the demised property.

3. SAME.

   In an action for rent and damages claimed to be due under a lease, in which the defendant claimed that he had been evicted by the owner and had surrendered the premises, evidence that the agent of the landlord had prevented the defendant from making use of certain rooms which he required in his business for sewing machines, and that the agent moved or caused the machines to be moved to another part of the floor, promising the defendant to build an extension to the room in which they had been situated, that the promise was never carried out, raised an issue for the jury on the defense of eviction.

4. SAME—LEASE—TRIAL—CHARGE.

   Instructions of the trial court that they might find that the tenant had been evicted by the plaintiff, if his agent prevented the tenant from using a portion of the premises for the purpose for which the same had been leased, that if there was a partial eviction, the tenant might remain and continue to occupy the premises, but he might not be held for rent under the lease; on the other hand if the tenant acquiesced in what was done he could not afterwards, having slept on his rights and given the lessor

the right to think that he was perfectly satisfied, terminate the lease; that if the landlord said to the defendant that if he was not satisfied, he could get out, and the tenant, with reasonable expedition, took advantage of the permission, and moved out of the leased building, the lease was terminated, *held*, to submit to the jury in a sufficient manner the question of eviction and surrender.

5. SAME—REQUESTS TO CHARGE.
   *Held*, that the court did not err in refusing to charge the jury as requested by the plaintiff: also that the verdict was not contrary to the weight of the evidence.

6. AMENDMENT—TRIAL—DAMAGES.
   At the trial of an action for the third time it was discretionary, on appeal from justice's court, whether or not the court should grant a motion of the plaintiff to amend its bill of particulars so as to include a claim for expense of broker's services in re-renting the premises, which the defendant surrendered.

Error to Wayne; Mandell, J. Submitted October 9, 1914. (Docket No. 44.) Decided January 4, 1915.

Assumpsit in justice's court by the Bamlet Realty Company against Louis Doff for rent and damages under a lease. From a judgment in plaintiff's favor defendant removed the cause to the circuit court. Judgment for defendant. Plaintiff brings error. Affirmed.

*Prentis & Mulford,* for appellant.

*Abram Sapiro,* for appellee.

STONE, J. This case originated in justice's court, where plaintiff declared on all of the common counts in assumpsit, and especially for use and occupation, and upon a written lease, filing a bill of particulars in which it claimed rent due under said written lease, dated February 10, 1910, for premises known as Nos. 601 and 602, Bamlet building, as follows:

Rent for month of October, 1910................. $100
Rent from November 1, 1910, to November 15,
    1910 ........................................   50
Rent of small room March 1, 1910, to October 1,
    1910, 7 months at $25 per month...............   175
Damages to premises...........................   55

The plea was the general issue, with notice of eviction and surrender. The written lease in evidence was made by plaintiff, as party of the first part, and the defendant, as party of the second part, for a term of four years and six months from and after March 1, 1910, upon the terms and conditions mentioned, to be occupied for a ladies' tailoring establishment, and to be used for no other purpose without the written consent of the party of the first part. By the terms of the written lease the rent of $100 per month was to be paid as follows: $100 on the signing of the lease, and $100 on April 1, 1910, and $100 on the first day of each and every month thereafter during the life of the lease, being monthly in advance. The following additional agreement was made. bearing date February 9, 1910:

"Whereas, Bamlet Realty Company is about to make alterations on the sixth floor of the Bamlet building to accommodate Louis Doff, under his lease, and said alterations were to be completed by March 1, 1910, it is agreed that the rent due under said lease shall abate *pro rata* during such time after March 1, 1910, as the Bamlet Realty Company is engaged in completing such alterations.

"This agreement attached to the lease of the Bamlet Realty Company and Louis Doff, becomes a part of the same.

"Electric wiring to be run for motor and electric lights to be put in where designated by party of the second part." Signed by the parties.

Upon the trial of the case in the circuit court, as plaintiff's counsel was making his opening statement, wherein he claimed $60 for commission paid a broker

in re-renting the premises, objection was made by defendant's counsel on the ground that the item was not in the plaintiff's bill of particulars. Plaintiff's counsel then moved the court to allow the bill of particulars to be amended by adding an item of $60, paid for re-renting the premises. There had already been two trials of the case, one in justice's court and one in the circuit court. The court remarked that the motion came rather late, and that counsel might have made the motion before. Plaintiff's counsel then stated that he appreciated that it was discretionary with the court, and the court said that its discretion at that late day called for sustaining the objection to the amendment, to which ruling plaintiff excepted. Defendant, by the undisputed evidence, moved into the premises before the 1st of March, at which time the alterations that were to be made had not been completed. Prior to this time the floor had been used as a dance hall, and was not partitioned. There is a conflict in the evidence when the alterations were made —whether before or after March 1, 1910. It appears to be undisputed that the use of the premises by the defendant for the operation of sewing machines was very soon objected to by the plaintiff, claiming that the noise of the machines was such as to disturb another tenant on a lower floor that was using rooms there for club purposes, and the machines were moved from the rooms that were rented and placed in a smaller room not included in the lease, and for the use of which the item of $175 was claimed. The parties do not agree as to who moved the machines, the plaintiff claiming that the defendant acquiesced in the arrangement, and consented to the moving of the machines into the small room. But it was the claim of the defendant, upon the trial, that the machines were moved against his will by one Stoddard, who seems to have been the agent or engineer of the plain-

tiff; that there was not sufficient space in the small room for the use of the large number of machines needed by defendant in conducting his business, and that only about one-half the number of machines could be set up and used in the small room; that he objected to this, and only consented to the change upon the promise of the plaintiff (which was never carried out) that there should be built an extension to this small room. The testimony was in dispute, also, as to the extent of the improvements that were put in the two rooms mentioned in the lease, the defendant claiming that these rooms were never fitted up suitably for show room and fitting room such as he needed in conducting his business, and that frequent complaint was made to the plaintiff in that regard, and he also complained that, being excluded with his machines from the large room, he had not sufficient room to carry on his business. It is the claim of defendant that in the latter part of May, or first of June, while he and his wife were making complaint to the president of the plaintiff this officer used some profane language to defendant's wife, which caused their relations from that time on to be unpleasant. A witness for defendant testified upon that subject as follows:

"*Q.* Did you hear Mr. Doff complain to Mr. Bamlet or Mr. Stoddard at any time about the condition of the fitting room?

"*A.* Continually, he always complained about it, because he could not do his work.  *  *  *  I was present and heard Mr. Doff complain continually to Mr. Bamlet and Mr. Stoddard. First he said he was to fix them up about the latter part of May. One evening about quitting time, while Mr. Doff was at the elevator, he asked when he was to fix it up, when he was to fix up the premises, and he did not use very nice language at that time, and then Mr. Doff walked away.

"*Q.* What was said at that time, if you will repeat it?

"*A.* He said, 'Damn it; I ain't going to do a damn thing for you.' And Mr. Doff said, 'All right, I will look for another place.' And he said, 'Get out, and get out quick,' and they did not complain after that; that was enough; it was the latter part of May."

It was the claim of defendant that thereupon he commenced to look for other rooms, and, finally, on or about the 1st day of October, he vacated the premises in question, having paid all the rent under the written lease, during the time of such occupancy. The evidence tended to show that the plaintiff was to some expense later in putting the premises in proper condition, and finally was able to re-rent the premises described in the written lease, on the 15th day of November at the same rental, and the $150 claim is for the rental value of the premises while they remained vacant for the month and a half between October 1st and November 15th. The trial of the case resulted in a verdict for the defendant of no cause of action. There was a motion for a new trial upon the grounds that the verdict and judgment were not in accordance with the just rights of the plaintiff, because said verdict and judgment were against the weight of the evidence and not justified by any proper evidence introduced in the case, because the verdict and judgment were not in accordance with the law, and because the court erred in admitting certain testimony favorable to the defendant and prejudicial to the plaintiff, which is set up in great detail, and also erred in refusing to give plaintiff's requests to charge, and in the charge of the court. The motion for a new trial was denied, and the reasons therefor stated, to which plaintiff's counsel excepted, and it has brought the case here upon writ of error.

There are thirty-four assignments of error considered and discussed under the following heads:

(1) Error in admission and rejection of testimony.

(2) Error in not striking out testimony.

(3) Error in not directing a verdict for plaintiff.

(4) Error in the court's charge.

(5) Error in refusing to give plaintiff's requests to charge.

(6) Error in not granting a new trial and reasons given thereon.

(7) Error in not permitting plaintiff to amend pleadings.

We have examined each of the assignments of error.

(1) In our opinion the alleged errors in admission and rejection of testimony, covered by the numerous assignments under this head, were cured by the court's withdrawal of the matters from the jury. We cannot better demonstrate this than to quote from the charge of the court. The court, after stating the claims of the respective parties, said, referring to the written lease:

"This contract of lease provided for the renting by the plaintiff to the defendant certain rooms, or certain floor space on the sixth floor of the Bamlet building for a certain purpose, for the purpose of carrying on the business of making women's skirts and gowns and dresses, I presume, but you have heard from the evidence what the purpose was. There was also executed at the same time, or at a subsequent time—we are not informed of the time definitely—another writing which provided for cutting up the floor space into rooms by partitions and the furnishing of other things by the plaintiff to the defendant. The defendant claims this was not done, but I charge and instruct you that that claim cannot be properly made in this case, for the reason that the contract, that is, the paper writing between the parties, provided for a penalty, and that penalty was that if the improvements were not made as contracted for, then the rent of the premises should, during the time the premises were not put in proper order, cease; and by reason of the fact that each and every month during the time of occupation the defendant actually paid $100, the

amount of the rent reserved, he is now estopped from claiming that was an eviction, or that the plaintiff did not carry out his terms of the contract, providing that the certain improvements should be made.   So, although certain things have been said in the argument concerning that alleged  wrong on the  part of the plaintiff to the defendant, and although certain testimony has been taken on that point, I now charge and instruct you that you are to pay no attention to that, for it is not a good excuse for not paying the rent on the part of the defendant that the premises were not put in the condition that the parties agreed they should be put in.   So that matter is out of the case."

It seems, both by reason and  authority, that any possible error committed by the admission of the testimony in question was cured by the court withdrawing the subject from the consideration of the jury and the positive instructions given on that point.   *Hill* v. *Robinson*, 23 Mich. 24; *Dykes* v. *Wyman*, 67 Mich. 236-239 (34 N. W. 561) ; *Cadman* v. *Markle*, 76 Mich. 448-454 (43 N. W. 315, 5 L. R. A. 707) ; *Blaisdell* v. *Scally*, 84 Mich. 149 (47 N. W. 585) ; *Tolbert* v. *Burke*, 89 Mich. 142-145 (50 N. W. 803) ; *Smith* v. *Railway*, 155 Mich. 466-472 (119 N. W. 640) ; *Stolz* v. *Railway*, 167 Mich. 300-305 (132 N. W. 1021).

(2) It is alleged that there was error in not striking out testimony.   The following appears:

*"Plaintiff's Attorney:*   I desire to make a motion to strike out all the testimony that alterations were not made, and that the alleged acts do not constitute an eviction or surrender.   *   *   *

*"The Court:*   There is some testimony on the part of some one that Mr. Bamlet, as an officer of the corporation, said, 'If you don't like it, you can get out,' and on that declaration they did decide to move, and the question is raised whether they did move because of that, and whether they used diligence in moving.

*"Plaintiff's Attorney:*   Whether such  acts  would constitute an eviction, or whether we could put them out?

"*The Court:*   I shall charge the jury that there is
nothing here under the repair clause of the agreement
that would justify their leaving; that must be so, be-
cause a long time has elapsed, and the only justifica-
tion for leaving was the fact that either the conditions
were rendered so intolerable to the tenants, or it
amounted to an eviction, or they left under the ex-
press consent of the landlord.

"*Plaintiff's Attorney:*   I want it to appear that we
move to direct a verdict for rent for a month and a
half, and damages to the small room.   I would like to
be heard on that, but not in the presence of the jury.

"*The Court:*   There are two matters only suggested
by the evidence, the weight being with the jury
whether the conditions were rendered intolerable by
reason of certain conduct of the plaintiff, and the
other is whether an express promise was given, and
those two matters are in dispute and are the only
matters."

The defendant insisted and gave evidence tending
to sustain his position, that the interference practiced
by the plaintiff's officer, Frank Bamlet, upon the de-
fendant in refusing to allow him to use the rooms
mentioned in the written lease for the purposes for
which they had been rented, constituted an eviction.
We have examined the authorities upon the subject
quoted by counsel upon both sides, and are of the
opinion that this claim of the defendant, if found by
the jury to be true, would bring the case within the
decisions of this court, holding that to constitute an
eviction of a party, an actual, physical expulsion from
the rooms would not be necessary.   Any act or acts
of the landlord which deprived the tenant of the bene-
ficial enjoyment of the rooms to which he was entitled
under the lease would amount in law to an eviction.
*Grove* v. *Youell,* 110 Mich. 285 (68 N. W. 132, 33 L.
R. A. 297), and cases there cited; *Adams* v. *Werner,*
120 Mich. 432 (79 N. W. 636) ; *Pridgeon* v. *Boat Club,*
66 Mich. 326 (33 N. W. 502).   There this court used
the following language:

"A party should be held evicted when the act of the landlord is of such a character as to deprive the tenant, or has the effect of depriving him, of the beneficial use and enjoyment of the whole or any part of the demised property, to the extent he is thus deprived."

We do not think there was any error in refusing to strike out the testimony upon that subject.

(3) We do not think the court erred in refusing to direct a verdict for the plaintiff.

(4) Error is assigned upon the following part of the charge of the court:

"The plaintiff claims that under the terms of the lease the defendant was holden and bound for a period of 4½ years. Instead of staying during that period and paying rent, that without any legal justification or excuse the defendant left the premises at the expiration of some six months. The plaintiff claims that it did what it was obliged to do—it sought to get another tenant—and that it used expedition in that matter, but did not succeed in getting another tenant until the expiration of a month and a half, and therefore it claims the right to recover here the rental for a month and a half. That is how their claim in that regard amounts to $150. So much for the plaintiff's claim. With regard to that claim the defendant says this:

"'You agreed in your lease to give me the premises fitted up and suitable for my business, and it was agreed and understood between us that I was to carry on a certain business, and you knew that my business would call for the use of certain sewing machines, and for the use of the premises in a certain way, and you contracted to give me the premises to be used in that manner, and this obligation on your part you failed to fulfill, and therefore you evicted me, and you cannot complain because I left.'

"The defendant claims that he had the right, under his lease, to set up his sewing machines and run them in any part of the premises he desired under the terms of this lease. Because they made a noise, the plaintiff

said, 'You cannot run your machines here,' and took them out of the principal room and put the same in a small room, which, the defendant claims, prevented him carrying on the volume of business that he expected to carry on in those premises. In answer to that claim of the defendant the plaintiff claims that the defendant was perfectly satisfied, and that when the suggestion was made that the sewing machines were making too much noise for the comfort and convenience of the people who occupied the premises below these rooms, the defendant acquiesced and used his sewing machines in the small room, called the smaller room here, and nothing was heard in the nature of a complaint from the defendant. There is a statement of facts that is contradicted. You, as judges of the facts, will have to find out from a search of the evidence in the case just which theory is established. I charge and instruct you with regard to the defendant's claim this: That where one leases premises to be used for certain particular purposes, if he is prevented from carrying out that purpose by his landlord, there becomes an eviction in part, if not in whole, and that where there is a partial eviction, the tenant has the right to remain and pay the rent but he cannot be holden under the lease. On the other hand, if the tenant acquiesces in what is done, he cannot afterward, after the lapse of a long time, after he has slept on his rights and given the other party to the lease the idea that he was perfectly satisfied, he cannot then step forward and terminate the lease. The rights of the parties are sometimes fixed by a series of conduct as well as by word by one and agreed to by the other, and the claim of the plaintiff is this: That as the defendant occupied those rooms without any notice to it of dissatisfaction, during all that time there was no legal eviction, either in whole or in part, from the premises. That is a question of fact, and will rest entirely with you to be determined. Now, it is further claimed by the plaintiff that this occupancy by the defendant was continued; that nothing was ever said by the plaintiff that gave the defendant the right to leave at any time. The defendant with regard to that claim of the plaintiff, says this: That at some time during the occupancy the defendant

objected to the manner in which things were being conducted, and that the president, Mr. Bamlet, himself, of the Bamlet Realty Company, stated that if the defendant was not satisfied, he could get out, and that he accepted that as a release from his obligation under the lease, and actually did get out with as great expedition as the circumstances would permit. Now, if anything of that kind was said, the evidence shows that it was said in the spring, either in May or June, but the time is not definitely fixed by any of the witnesses, and you will have to determine whether it is reasonable to believe that the defendant got out by reason of that statement, if the statement was made, although the statement is denied, whether he got out at the end of September by reason of that, or whether some other thing in the mind of the defendant at that time caused him to move. Where a landlord says to a tenant, 'You may leave,' if you wish to take advantage of that permission, you must leave, not immediately, but with as great expedition as circumstances will permit. So if you consider that claim, you will have to consider the circumstances that existed at the time or subsequent to the time it is claimed that the release was given, or the permission was given to move out. The defendant claims he was delayed by reason of the peculiarity of the business and the difficulty in obtaining suitable quarters in which to move. Those circumstances have been narrated, and you will have to study the evidence to determine what the truth of these claims is. So much with regard to the claim of the plaintiff with regard to the $150 item.

"Now the second item: The plaintiff claims that the defendant occupied a smaller room. That room was not spoken of in the lease or in the other contract that existed at the time between the parties. It is claimed that that room was actually occupied by the defendant, and that claim is not denied, and for a period of some seven months. Now, with regard to that claim, the plaintiff claims that nothing ever was actually said except that it was understood that the defendant wanted that room, and the plaintiff claims that wanting the room and actually using it at a loss or detriment to the plaintiff constituted a contract be-

tween them, and carried with it an agreement on the part of the defendant to pay such a sum for rental as the room was reasonably worth. You have heard the testimony with regard to that, and you will have to consider that claim after a full consideration of the testimony. The defendant, with regard to that claim, says this: That he was prevented from using the room that he had actually hired, and prevented from using it by the plaintiff because of the noise made by the sewing machines that I have already referred to, and he says that the putting of him—that is, the defendant—into that room was an act on the part of the plaintiff for the plaintiff's own benefit, and not for the benefit of the defendant at all, and therefore he claims that the claim of the plaintiff is unjust, and that there was no contract relations that ever existed, either by contemplation in law or agreement of the parties, for the leasing of that room. That becomes, of necessity, a disputed question of fact, and you will have to determine that. If you find that the plaintiff's claim in that regard is established by the proofs, then the plaintiff is entitled to a fair and reasonable compensation for the use of that room for the period of seven months. The full claim that he makes is for $175. If you find that the defendant has established his theory with regard to that item, then the defendant, with regard to that item, is entitled to a verdict of no cause of action."

We have examined the portion of the charge complained of, and are of opinion that there is no error therein, and that the court properly submitted to the jury the question whether the leaving of the premises under the circumstances was within a reasonable time. In our opinion this view finds support in the case of *Kuschinsky* v. *Flanigan*, 170 Mich. 245 (136 N. W. 362, 41 L. R. A. [N. S.] 430, Ann. Cas. 1914A, 1228), and cases there cited.

(5) In our opinion the charge of the court properly presented the questions involved to the jury, and the court did not err in refusing to give plaintiff's requests to charge.

(6) We have examined the motion for a new trial, and are of opinion that the court did not err in refusing to grant the same. We are not prepared to say that the verdict was so clearly against the weight of the evidence as to demand interference on that ground.

(7) We think the court did not err in refusing to permit the bill of particulars to be amended. It should be borne in mind that this was the third trial of the case, and, in the exercise of its discretion, we find no error in the refusal of the court to permit the amendment. Unlike the case of *Connell* v. *McNett*, 109 Mich. 329 (67 N. W. 344), the proposed amendment was not justified by anything contained in the declaration or bill of particulars, and would operate as a surprise to the defendant.

We have considered all of the assignments of error, and are of the opinion that there is no reversible error in the record, and the judgment below is therefore affirmed.

BROOKE, C. J., and MCALVAY, KUHN, OSTRANDER, BIRD, MOORE and STEERE, JJ., concurred.